# Exhibit L

| | |
|---|---|
| BAIS BRUCHA INC. AND RABBI MORDECHAI SEKULA<br><br>Plaintiff<br><br>V.<br><br>TOWNSHIP OF TOMS RIVER, NEW JERSEY, AND TOWNSHIP OF TOMS RIVER ZONING BOARD OF ADJUSTMENT<br><br>Defendant | United States District Court  - Trenton<br>DOCKET NO.: 3:21-cv-03239-ZNQ-RLS<br><br>Civil Action<br><br>**CERTIFICATION OF KLDISCOVERY** |

KLDiscovery, duly certify and says:

1.   KLDiscovery Ontrack, LLC ("KLDiscovery") is an E-Discovery Provider engaged by Methfessel & Werbel ("Counsel") on behalf of the Township of Toms River and the Toms River Zoning Board of Adjustment to conduct a search and collection of Electronically Stored Information in the matter of Khal Anshei Tallymawr v. Township of Toms River and Toms River Zoning Board of Adjustment which we understand to be Docket No.: 3:21-cv-02716-RK-RLS. It is our understanding that the searches conducted are applicable to both the above captioned matter and the Khal Anshei matter.

2. KLDiscovery conducted a search of the Township's Microsoft Office 365 system. Following a June 27, 2022 conversation with Township Manager of Information Technology, Joseph Jennings, it was determined that the Township does not use One-drive or Sharepoint to maintain data and as such the collection of data was based on the Township's Microsoft Office 365 data.

3. Collection of ESI from The Township Defendants Office 365 data returned 814,352 items. The post processing count, which is the number after post expansion and

post inline image expansion is 1,175,882 items. On July 6, 2022, after deduplication based on the Plaintiffs first set of search terms the number of documents that were to be searched was reduced to approximately 43,913 items. That collection was a result of the terms contained in **Exhibit A**. We note that there were some discrepancies which we have run searched to rectify.

a. 2527 Whitesville" and "2527 Whitesville Road", initially our search terms only included 2527 Whitesville.

b. Isaac Lowy was not initially provided in the search terms emailed to us to begin the collection.

c. We inadvertently omitted the terms "10-acre" due to an input error.

d. The following terms were reformatted from dtSearch syntax to Lucene syntax for use in Nebula.  However the functionality is the same.  For minimum lot area w/20 (church worship synagogue) the ORs were also inserted between words:

| | |
|---|---|
| Development w/10 "North Dover" | ("Development" "North Dover")~10 |
| Invasion w/20 Kelaher | ("Invasion" "Kelaher")~20 |
| Overdevelopment w/10 "North Dover" | ("Overdevelopment" "North Dover")~10 |
| "Over-development" w/10 "North Dover" | ("Over-development" "North Dover")~10 |
| "Minimum lot area" W/20 (church worship synagogue) | ("Minimum lot area" ("church" OR "worship" OR "synagogue"))~20 |

e.  The following terms were reformatted to include ORs between the search terms

a.  Zoning AND (churches "places of worship" synagogue shul) was run as Zoning AND (churches OR "places of worship" OR synagogue OR shul)

b.  ("Rural Residential" "RR zone" "RR district) AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue) was run as ("Rural Residential" OR "RR zone" OR "RR

district") AND ("place of worship" OR "places of worship" OR "house of worship" OR "houses of worship" OR church OR synagogue)

c. Parking AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue) was run as Parking AND ("place of worship" OR "places of worship" OR "house of worship" OR "houses of worship" OR church OR synagogue)

4. The search that was conducted was taken from the Township email accounts of the following custodians:

1. George Wittman
2. Terrance Turnbach
3. Daniel Rodrick
4. David G. Roberts
5. Maria Maruca
6. Bernard Mackle
7. Matthew Lotano
8. Justin Lamb
9. Brian Kubiel
10. Josh Kopp
11. Thomas Kelaher
12. Laurie Huryk
13. Maurice Hill
14. Kevin Geohegan
15. Hannah Desmond
16. Robert Chankalian
17. Melissa Benedetto
18. Stephanie Baumgartner

5. In addition in our data collection we searched for the following emails:

1. Ernie Peters
2. Jason Crispin
3. Art Blank
4. Robert Alston
5. Lynn O'Toole
6. Joseph Kempker
7. Richard Tutela
8. Anthony Fontana
9. Nels Luthman

10. Matthew Yezzi

We found email accounts associated with Robert Alston and Matthew Yezzi, but those accounts returned no information. The balance of the above searches did not result in our locating a Township email account for the above-named individuals.

6.  On June 13, 2023 we conducted a second search of information at the request of Counsel for the Township based on the terms supplied to us by Counsel for the which resulted in an additional 79,251 documents that contained some of the terms searched in **Exhibit B**.

7.  The above searches and subsequent productions were performed pursuant to the Order supplied to KLDiscovery by Counsel in this matter. See **Exhibit C**.

8.  While we have made every effort to ensure accuracy and we continue to do so we additional search term discrepancies due to a transcription error.

9.  The following terms were inadvertently omitted from the search due to a transcription error. As we identified the issue we have run the below terms to ensure the collection is reviewed.
    a.  "Vacant land evaluation"
    b.  Boynton
    c.  "Orthodox community"
    d.  "Toms River border" AND Lakewood
    e.  "Lamdan lane" AND character
    f.  "Lamdan lane strong"
    g.  "Gabrielle Run" AND Saturda*
    h.  "South Lakewood"
    i.  Lakewood w/20 Brooklyn
    j.  "Cease and desist"
    k.  "Crystal mile shul"
    l.  "School or other place of instruction" w/40
    m.  "place of worship"
    n.  Marci
    o.  "Ms. Hamilton"
    p.  Parking AND ("places of worship" "place of worship" "houses of worship" "house of worship")

a.   .  The following proximity terms were converted from dtsearch syntax on the left to  Lucene on the right to run in Nebula. See Exhibit B, Column 4

| | |
|---|---|
| "House of worship" w/10 "minor collector","major collector", "minor arterial", or"principal arterial roadway". | ("House of worship" "minor collector")~10 |
| | ("House of worship" "major collector")~10 |
| | ("House of worship" "minor arterial")~10 |
| | ("House of worship" "principal arterial roadway")~10 |
| "Impervious coverage" W/20 (church worship synagogue) | ("Impervious coverage" (church OR worship OR synagogue))~20 |
| "Maximum lot building coverage" W/20 (church worship synagogue) | ("Maximum lot building coverage" (church OR worship OR synagogue))~20 |
| "Minimum lot area" W/20 (church worship synagogue) | ("Minimum lot area" (church OR worship OR synagogue))~20 |
| "Minimum lot width" W/20 (church worship synagogue) | ("Minimum lot width" (church OR worship OR synagogue))~20 |
| Invasion w/20 Kelaher | (Invasion Kelaher)~20 |
| Lakewood w/10 Community | (Lakewood Community)~10 |
| Overdevelopment w/10 "North Dover" | (Overdevelopment "North Dover")~10 |
| Residential w/10 development | (Residential development)~10 |
| Synagogue W/30 "ordinance" | (Synagogue ordinance)~30 |
| Lakewood /10 "property line" | (Lakewood "property line")~10 |

- These proximity terms had spaces between phrases replaced with OR, as shown below (original on left)

| | |
|---|---|
| ("Rural Residential" "RR zone" "RR district") AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue) | ("Rural Residential" OR "RR zone" OR "RR district") AND ("place of worship" OR "places of worship" OR "house of worship" OR "houses of worship" OR church OR synagogue) |
| Zoning AND (churches "places of worship" "place of worship" "houses of worship" "house of worship" synagogue shul) | Zoning AND (churches OR "places of worship" OR "place of worship" OR "houses of worship" OR "house of worship" OR "synagogue shul") |
| Parking AND ("places of worship" "place of worship" "houses of worship" "house of worship") | Parking AND ("place of worship" OR "places of worship" OR "house of worship" OR "houses of worship" OR church OR synagogue) |
| "10 acre" AND ("places of worship" "place of worship" "houses of worship" "house of worship") | "10 acre" AND ("places of worship" OR "place of worship" OR "houses of worship" OR "house of worship") |
| "2 acre" AND ("places of worship" "place of worship" "houses of worship" "house of worship") | "2 acre" AND ("places of worship" OR "place of worship" OR "houses |

| | of worship" OR "house of worship") |
|---|---|

<u>Exhibit B, Column 1</u>:

- The two terms below were converted from dtsearch (left) to lucene (right) to run in Nebula

| Development /10 "North Dover" | (Development "North Dover")~10 |
|---|---|
| Over-development w/10 "North Dover" | ("Over-development" "North Dover")~10 |

<u>Exhibit B, Column 2</u>:

- The term "1191 Hickory" was inadvertently run as "1911 Hickory." We have run this term as 1191 Hickory.

- The proximity searches below were modified from dtsearch (left) to lucene (right) to run in Nebula

| "Street Vacation Application" w/10 "Clark Street" | ("Street Vacation Application" "Clark Street")~10 |
|---|---|
| "Street Vacation Application" w/10 "Fillmore Street" | ("Street Vacation Application" "Fillmore Street")~10 |
| Hickory W/10 (synagogue shul worship) | (Hickory "synagogue shul worship")~10 |

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment by law.

Name:   Meghan Glancy

Title:   Senior Project Manager

Signature: *Meghan Glancy*

DATED:  August 11, 2023

Exhibit A

- "10 acre"
- "10-acre"
- "1940 Lakewood"
- "1940 Route 9"
- "1940 Rte 9"
- "250 acres"
- "2527 Whitesville"
- "4508-16"
- "4558-17"
- "4700-21"
- Antisemit*
- Anti-semit*
- "Bar Mitzvah"
- Bigot*
- "Black hats"
- bloc
- Blockbusting
- Brooklyn
- Chabad
- Chasidic
- Chassidic
- CUPON
- Development w/10 "North Dover"
- "Equal Terms"
- Haredi
- Hasid*
- Hassid*
- "House of worship"
- "Department of Justice"
- DOJ
- Eruv
- Hebrew
- Hitler
- "House of worship"
- "Houses of worship"
- Invasion w/20 Kelaher
- Jerusalem
- Jew*
- Jewish
- Jews
- Judiasm
- Kapporos
- "Khal Anshei"
- Kosher
- Lakewood AND Community
- "Lakewood border"

- Lowy
- "Marci Hamilton"
- Mikvah
- Mikveh
- "Minimum lot area" W/20 (church worship synagogue)
- Minyan
- Moratorium and "new development"
- Moratorium and "North Dover"
- "Neighborhood Watch"
- "No Knock"
- "No-Knock"
- "Open space"
- Orthodox
- Over-development w/10 "North Dover"
- Overdevelopment w/10 "North Dover"
- Parking AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue)
- "Place of worship"
- "Places of worship"
- "Quality of life"
- Rabbi
- "Real estate solicitation"
- "Real-estate solicitation"
- "Religious Land Use and Institutionalized Persons Act"
- "Religious exercise"
- "Rise Up Ocean County"
- "RLUIPA"
- "RUOC"
- ("Rural Residential" "RR zone" "RR district) AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue)
- Sabbath
- Shabbat
- Shabbos
- Shul
- Storzer
- Sukkah
- Swastika
- Synagogue
- Tallymawr
- "Ten acre"
- "Ten-acre"
- "Toms River Strong"
- "TomsRiverStrong"
- "Toms River Matters"
- "TomsRiverMatters"
- "TR Strong"

- USDOJ
- "Vacant land"
- Whitesville
- Yarmulke
- Yeshiva
- Yitzy
- "Yom Kippur"
- Zoning AND (churches "places of worship" synagogue shul)

Exhibit B

| 1940 Terms to Rerun from 04/01/2020 to Present | | Terms Specific to Khal Anshei - 01/01/2017 to Present | | Terms Specific to BB - 12/01/2017 to Present | | New Terms to be run 01/01/2009 to Present |
|---|---|---|---|---|---|---|
| "1940 Lakewood" | | "2527 Whitesville" | | "1191 Hickory" | | "Black hats" |
| "1940 Route 9" | | "Block 13.02" AND "Lot 37" | | "1181 Hickory" | | "black hat" |
| "2373 Lakewood" | | "ZP-20-1451" | | "Appeal No. 13687" | | "Open space" |
| "250 acres" | | "Resolution 2021-08" | | "Street Vacation Application" w/10 "Clark Street" | | "Ten acre" |
| "Autumn Ridge" | | "Resolution 2021-09" | | "Street Vacation Application" w/10 "Fillmore Street" | | "Ten-acre" |
| "Block 159" and "Lot 9.01" | | "Appeal No. 13688" | | "Resolution 2021-06" | | "10 acre" |
| "Block 171" | | "Michael Klein" | | "Resolution 2021-08" | | "10-acre" |
| "Eminent Domain" | | "Khal Anshei" | | "Block 191" AND "Lot 1.01" AND "Lot 1.02" | | "1940 Rte 9" |
| "Gabrielle Run" | | "4700-21" | | "V-19-00126" | | "Bar Mitzvah" |
| "Hickory Pines" | | "4752-22" | | "V-19-00127" | | "Department of Justice" |
| "Lots 11, 17, 18, 19 and 32" | | Tallymawr AND zba | | "Bais Brucha" | | "Equal Terms" |
| "Marci Hamilton" | | | | Sekula | | "House of worship" |
| "No Knock" | | | | "ZP-20-1452" | | "House of worship" w/10 "minor collector", "major collector", "minor arterial", or "principal arterial roadway". |
| "No-Knock" | | | | "4700-21" | | "Houses of worship" |
| "Open Space Trust Fund" | | | | "4752-22" | | "Impervious coverage" W/20 (church worship synagogue) |
| "open space" | | | | Hickory W/10 (synagogue shul worship) | | "Maximum lot building coverage" W/20 (church worship synagogue) |
| "real estate solicitation" | | | | | | "Minimum lot area" W/20 (church worship synagogue) |
| "real-estate solicitation" | | | | | | "Minimum lot width" W/20 (church worship synagogue) |
| "Religious Land Use and Institutionalized Persons Act" | | | | | | "Place of worship" |
| "Rise Up Ocean County" | | | | | | "Places of worship" |
| "Rise Up" | | | | | | "Quality of life" |
| "Riverwood Chase" | | | | | | "Toms River Matters" |
| "RLUIPA" | | | | | | "TomsRiverMatters" |
| "RUOC" | | | | | | "TomsRiverStrong" |
| "Ten acre minimum" | | | | | | "Yom Kippur" |
| "Ten-acre minimum" | | | | | | ("Rural Residential" "RR zone" "RR district") AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue) |

| | | | | |
|---|---|---|---|---|
| "Toms River Strong" | | | | Anti-semit* |
| "TR Strong" | | | | Antisemit* |
| 4508-16 | | | | Bigot* |
| 4558-17 | | | | bloc |
| Anti-semite | | | | Blockbusting |
| Anti-semitic | | | | Brooklyn |
| Antisemite | | | | CUPON |
| Antisemitic | | | | DOJ |
| Bigot | | | | Eruv |
| Bigoted | | | | Haredi |
| Chabad | | | | Hasid* |
| Chasidic | | | | Hassid* |
| Chassidic | | | | Hebrew |
| Condemn | | | | Invasion w/20 Kelaher |
| Condemnation | | | | Jerusalem |
| Development /10 "North Dover" | | | | Jew |
| Guttman | | | | Jew* |
| Haredi | | | | Judaism |
| Hasid | | | | Kapporos |
| Hassidic | | | | Kosher |
| Hitler | | | | Lakewood w/10 Community |
| Invasion | | | | Lowy |
| Jew | | | | Mikvah |
| Jewish | | | | Mikveh |
| Jews | | | | Minyan |
| Kesserman | | | | Overdevelopment w/10 "North Dover" |
| Monsey | | | | Parking AND ("place of worship" "places of worship" "house of worship" "houses of worship" church synagogue) |
| Moratorium and "new development" | | | | Rabbi |
| Moratorium and "North Dover" | | | | Residential w/10 development |
| Orthodox | | | | Sabbath |
| Over-development w/10 "North Dover" | | | | Shabbat |
| Silberberg | | | | Shabbos |
| Synagogue | | | | Shul |
| Temple | | | | Storzer |
| Yenay | | | | Sukkah |
| Yeshiva | | | | Swastika |
| | | | | Tallymawr |
| | | | | USDOJ |

| | | | | Whitesville AND "synagogue shul" |
|---|---|---|---|---|
| | | | | Yarmulke |
| | | | | Zoning AND (churches "places of worship" "place of worship" "houses of worship" "house of worship" synagogue shul) |
| | | | | Parking AND ("places of worship" "place of worship" "houses of worship" "house of worship") |
| | | | | Parking AND church* |
| | | | | "10 acre" AND ("places of worship" "place of worship" "houses of worship" "house of worship") |
| | | | | "2 acre" AND ("places of worship" "place of worship" "houses of worship" "house of worship") |
| | | | | "70 East LLC" |
| | | | | "70 East, LLC" |
| | | | | "TR Investments" |
| | | | | "150 Locust" |
| | | | | "Block 159" AND "Lots 10" |
| | | | | "Block 159" AND "Lot 10" |
| | | | | Synagogue W/30 "ordinance" |
| | | | | "Block 159 and "Lot 9" |
| | | | | Lakewood /10 "property line" |
| | | | | "Religious discrimination" |
| | | | | "Route 70 Associates" |
| | | | | "place of worship" |
| | | | | "Places of worship" |
| | | | | "House of worship" |
| | | | | "Houses of worship" |
| | | | | "Rt 70 property" |
| | | | | Ramada AND schoo* |
| | | | | "Neighborhood watch" |
| | | | | "Way of life" AND preserv* |
| | | | | "Way of life" AND protect* |
| | | | | "Quality of life" AND preserv* |
| | | | | "Quality of life" AND protect* |
| | | | | Kapporos |
| | | | | Kapparot |
| | | | | "Next Lakewood" |
| | | | | "Vacant land analysis" |
| | | | | "Evaluation of vacant land" |

| | | | | | "Vacant land evaluation" |
|---|---|---|---|---|---|
| | | | | | Boynton |
| | | | | | "Orthodox community" |
| | | | | | "Toms River border" AND Lakewood |
| | | | | | "Lamdan lane" AND character |
| | | | | | "Lamdan lane strong" |
| | | | | | "Gabrielle Run" AND Saturda* |
| | | | | | "South Lakewood" |
| | | | | | Lakewood w/20 Brooklyn |
| | | | | | "Cease and desist" |
| | | | | | "Crystal mile shul" |
| | | | | | "School or other place of instruction" w/40 "place of worship" |
| | | | | | Marci |
| | | | | | "Ms. Hamilton" |

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Khal Anshei Tallymawr Inc.,

                    Plaintiff,

    v.

TOWNSHIP OF TOMS RIVER, NEW
JERSEY, and TOWNSHIP OF TOMS
RIVER ZONING BOARD OF
ADJUSTMENT,

                    Defendants.

Civ. No. 3:21-cv-02716-AET-RLS

### STIPULATION AND ORDER REGARDING DISCOVERY

Plaintiff and Defendants (collectively "Parties") conferred pursuant to Federal Rule of Civil Procedure 26(f) and agree on the standards for discovery, mutually seeking to reduce the time, expense and other burdens of identifying, locating, preserving, securing, collecting, preparing, reviewing and producing facts, information and materials for the purpose of producing/obtaining evidence, especially as it relates to electronically stored information ("ESI"). Therefore, the Parties enter into this Stipulation to govern discovery obligations in this action.

The Parties stipulate to the following:

**1)**        **Cooperation**

The Parties are committed to act in good faith throughout this matter and meet and confer on matters to resolve disputes in the spirit of cooperation.

**2)**        **Definitions**

**The Parties agree to define the below terms** for this litigation as:

1

a)    <u>Application</u> means a collection of one or more related software programs that enables a user to enter, store, view, modify or extract information from files or databases.  This term is commonly interchangeable with "program" and/or "software".

b)    <u>Archival Data</u> means information that is not directly accessible to the user of a computer system but that the organization maintains for long-term storage and recordkeeping purposes.  See also, "Backup".

c)    <u>Backup</u> means a copy of data created as a precaution against the loss or damage of original data in the event of a disaster or other circumstance limiting access to the live original data, whether created onsite, offline, remotely, or online.

d)    <u>Backup Recycling</u> means the process whereby an organization, entity or individual overwrites some or all of the previously retained backup data originally retained for a fixed or predetermined period in the ordinary course of business unless subject to a legal hold or other law or mandate requiring retention without recycling.

e)    <u>Bates Number</u> means a tracking number assigned to each page of each document in the production set.

f)    <u>Black & White Image</u> means a paper or electronic document that is scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that reflects the full and complete information contained in the original document.

g)    <u>Color Image</u> means photographs, color brochures, or other documents that are scanned or converted to JPEG files using a high-quality setting and that reflect the full and complete information contained in the original document.

f)    <u>Custodian</u> means the person having administrative control of a document or electronic file.

g)    <u>Deduplication (Deduping)</u> means the process of comparing electronic records based on their characteristics and removing duplicate records from the data set.

h)    <u>Document family</u> means a group of related documents that are considered collectively as a group such as an email with attachments – the email being the "parent" and the attachments "children."  Paper documents that are physically connected by binding, folders, or other cohesive physical or logical groupings may manually be deemed a document family if scanned and categorized as such.  For example, a folder title or binder cover becomes a "parent" and materials contained within the folder or binder its "children."

i)    <u>Draft document</u> means a preliminary version of a record and/or document before it has been completed, finalized, accepted, validated or filed.  Such records include working files and notes.  Records and information management policies may provide for the destruction of draft records upon finalization, acceptance, validation or filing of the final or official version of the record, unless subject to a legal hold or other law or mandate requiring retention in lieu of destruction.

j)    <u>Data File</u> means a consolidated file containing all of the fielded information that will be loaded into a database.  Data files must contain a header row in the first row identifying the field names. For more information about data files, see "metadata" below.

k)    <u>Effective date</u> means the date that all of the Parties execute this Stipulation.

l)    <u>Extracted text</u> means collecting text from files that include text in their original native file format or after generating text files from Optical Character Recognition (OCR) software for the purpose of indexing the text into an application for search and retrieval purposes.

m) <u>Image</u> means a tangible or electronic representation of a graphical depiction, picture, scanned file or other visual that has been digitally created or digitized without an accompanying text file. Examples of image file formats include non-searchable: Tagged Image File (.TIF or .TIFF), Bitmap Image File (.BMP), JPEG Image File (.JPG), Portable Network Graphic (.PNG).

i) <u>Image cross reference file</u> means a file (.LOG or .OPT) that links the images to the database records by using an ImageID numbering system that corresponds to Beginning Bates Numbering of records being produced.

j) <u>Metadata</u> means fielded information about a particular data set that describes how, when and by whom data was collected, created, accessed, modified and how it was formatted. Some metadata, such as dates and sizes, can easily be made available, whereas system and other metadata hidden or embedded might be unavailable to a non-technical computer user. Digitized paper or other scanned documents also will not contain metadata unless manually captured by visual inspection (i.e., bibliographic coding).

k) <u>Native File Format</u> means electronically generated files created in a given software application typically used in the ordinary course of business (e.g., a Word document originated from Microsoft Word; a PowerPoint slideshow originated from Microsoft PowerPoint; an email might have been generated from Outlook or Lotus Notes or web mail; an Excel spreadsheet originated from Microsoft Excel; etc).

l) <u>Not reasonably accessible</u> means ESI from a source(s) that a Party asserts it need not produce pursuant to Federal Rule of Civil Procedure ("FRCP") 26(b)(2)(B).

4

m)     <u>Optical Character Recognition ("OCR")</u> means utilizing software which takes data from a digitized scanned paper document or non-searchable image file and attempts to layer an extractable text file onto or accompanying that document.

n)     <u>Party</u> means any of the parties to this action, including, but not limited to, any employee, agent or other individual or entity in possession, custody or control of "documents or electronically stored information" within the meaning of FRCP 34(a).

o)     <u>Production</u> means the delivery of data and/or information in response to requests for production of documents, interrogatories, subpoenas, discovery orders or similar legal processes.

p)     <u>Production Media</u> means the physical material or portal used to store electronic discovery data.  Media typically is provided to parties by way of hard drives, thumb drives, computer disks, CDs, DVDs, or via a secure File Transfer Protocol (FTP) website.

q)     <u>Retention policy</u> means a policy established by a Party's official decision-making authority responsible for temporal oversight and management of documents, assets, ESI or other records subject to retention and disposition policies and procedures that govern that program, including the identification, classification, handling and disposition of the organization's records throughout their retention life-cycle.

r)     Webmail means email service that is provided through a website.

1.    Web Page means any internet and intranet pages including, but not limited to, pages on social media and social networking sites, blogs, or other sites, to which a Party has posted relevant information

2. Email client means a program or web application that is designed to receive, write, send, and keep your email messages.

s) <u>Web Site</u> means a collection of Uniform Resource Indicators (URIs, including URLs (Uniform Resource Locators)) in the control of one administrative entity. Web sites may come from different URIs, (e.g., FTP sites, telnet sites, and World Wide Web sites).

t) <u>World Wide Web</u> (WWW) means a collection of computers on the internet which use HTML-capable software (Internet Explorer, Google, etc.) to exchange data. Data exchange on the WWW is characterized by easy-to-use graphical interfaces, hypertext links, images and sound.

**3)      Preservation**

In accordance with the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Evidence ("FRE"), and the relevant controlling principles of law, the Parties having discussed their preservation obligations and needs pursuant to FRCP 26(f), hereby agree to preserve discoverable information in consideration of:

a)      the Parties' relative access to relevant information;

b)      the Parties' resources;

c)      the importance of the discovery in resolving the issues;

d)      the availability of the information from other, potentially less burdensome, sources; and

d)      whether the burden or expense of the proposed discovery outweighs its likely benefit.

The Parties agree that preservation does not by itself define the scope of discovery, especially as it relates to privileged, sensitive, and/or non-responsive materials unrelated to this action. No preservation effort by the Parties shall be deemed a waiver of any claim of privilege.

**4)      Limitations on Obligations to Preserve**

Parties agree to forego producing the following unless there is a question of spoliation, whereby Parties shall meet and confer to modify the scope of the below referenced limitations:

a)      Email delivery or read receipts;

b)      temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

c)      server, system or network logs;

d)      corrupt or unreadable files (unless password protected and the password is readily accessible);

e)      system or executive files (e.g., .exe, .dll);

f)      email files housed on device, but not entirety of information on mobile devices in the event that text messages come into scope;

g)      log data from photocopiers or fax machines;

h)      materials retained primarily for backup or disaster recovery purposes unless relevant ESI exists *only* on a Party's Backup data/system, whereby preservation is required and the Parties will meet and confer about how to produce such information. If the Parties cannot agree on how to handle such Backup data, the Parties will seek a ruling from the Court thereon;

i)      voice mails and voice mail logs**;** and

j)      any other file types subsequently agreed upon by the Parties.

**5)      Production Formats**

As part of Parties' ongoing cooperation, the following general considerations will apply to each production (whether offered on a rolling basis or otherwise):

a)     *Native File Production*:     Produce native files for Spreadsheets/Excels, PowerPoints, Non-Imaged Files (*i.e.,* Audio/Video), and any Proprietary Files (*i.e.,* DWG) where an image would not suffice in viewing the file in its totality, excluding redacted documents.

       1.   Each native file should be named by its Bates start with a stamped placeholder indicating the file has been produced natively.

       2.   Metadata and text files shall still be produced alongside any native files.

       3.   Except as provided in this document, the Parties are not obligated to produce ESI in native format.  However, either Party reserves the right to request particular documents in their native form, if they are able to provide an objective reason as to why the production of the document in native format will aid in the furtherance of their case.  When such a request is made, the Parties agree to work together in good faith to resolve any potential issues.

b)     *Redactions*: If a document is redacted, native files will be converted to 300 DPI Group IV single page TIFF files.  Color images will be converted to JPEG format. Redacted text files should accompany corresponding redacted images.

c)     *Document Family Group Integrity*: Each Parent and each child shall be produced as separate records, with each child/children subsequently following its/their associated parent file in order of review and in Bates numbering order.

d)     *Web Sites*: Social media or other web content will be produced with responsive text, photos, videos, or other relevant content, and include the date the content was posted or edited in a readily accessible format (*e.g.*, HTML, Microsoft Word, JPG, PDF, etc.). If visual formatting of

web pages is unavailable, screenshots capturing verifying date/time stamps and complete URL Web Site information will be an acceptable substitution.

      e)    *Multi-media files*: Audio and/or video should be produced separately, even if unviewable by a Party's review platform of choice.

      f)    *Database files*: Databases such as Microsoft Access files or other records with a .DB file extension should be produced separately for review in their respective native application where readily available.

      g)    *Backup Files:* Should any files need to be collected from an archived source (i.e. backup server), to the extent possible, all files should be reactivated into their original creation source, and collected from said active location, and NOT from the archived location.

      i)    *Decryption/Password Handling*: The Parties agree to remove encryption or password protection wherever feasible and provide passwords or assistance needed to open encrypted files identified in any production volume.

      j)    *Uncommon Proprietary Files*: Parties agree to meet and confer regarding the production of files that would require the use of proprietary software not commonly found in the workplace and explore other format options or ways to review these files.

      k)    *Timezone:* All electronically stored information shall be processed and produced using GMT/UTC.

**6)    Production Specifications**

      The following field names and definitions apply to the Parties for all productions and should be included with header information matching the below Field Names for any load file produced:

| Field Name | Definition |
|---|---|
| Bates_start | First Bates number for the first page of a native file document/email or converted TIFF or JPEG image. |
| Bates_end | Last Bates number for the last page of a native file document/email or converted TIFF or JPEG image. |
| Begattach | Starting Bates number of document family |
| Endattach | Ending Bates number of document family |
| Pgcount | Number of pages for a document |
| AttachCount | Number of attachments to a document. |
| Custodian | The name of the person who had primary control over the location from which the document was collected.<br><br>Email: Mailbox where the email resided at time of collection.<br><br>Native: Name of the individual or department from whose files the document originated.<br><br>Duplicate Custodians are reflected in the same field, with each custodian separated by a semi-colon |
| Company | Company/Organization submitting data |
| From | When referencing emails, "From" indicates the "Sender" field. |
| To | When referencing emails, "To" indicates the "Recipient(s)" field |

| | |
|---|---|
| **CC** | When referencing emails, "CC" indicates the "Carbon-Copy Recipient(s)" field. |
| **BCC** | When referencing emails, "BCC" indicates the "Blind Carbon-Copy Recipient(s)" field. |
| **Email Subject** | When referencing emails, " Email Subject" indicates the subject line. |
| **DateSent** | When referencing email, "DateSent" indicates the date the email was sent (format should follow MM/DD/YYYY) |
| **ReceivedTime** | When referencing email, "ReceivedTime" indicates the time the email was received (format should follow HH:MM:SS) |
| **SentTime** | When referencing email, "SentTime" indicates the time the email was sent (format should follow HH:MM:SS) |
| **Receiveddate** | When referencing email, "ReceivedDate" indicates the date the email was sent (format should follow MM/DD/YYYY) |
| **Mailbox Path** | Full path and folder location of email files |
| **Sort Date/Time** | Email attachments reflect date of parent email, and loose e-files reflect date last modified. |
| **Author** | Document author from document metadata |
| **CreateDate** | Date file was created |
| **CreateTime** | Time file was created |
| **ModDate** | Date file was last modified |
| **ModTime** | Time file was last modified |
| **Title** | Title of document from document metadata |
| **File Path** | File path / folder structure at the time of collection |

| Redacted | Indicates whether the document contains redactions |
|---|---|
| MD5 Hash | The MD5 hash value calculated when the file was collected or processed. |
| FileName | When referencing emails, this field will be empty. When referencing natives, the name of the original native file, including file extension. |
| Text_file | Path to produced text files |
| Native_file | Path to produced native files |
| FileExt | The file type extension representing each email or native file being produced |

**Load File & Production Format Requirements:**

a. Load file paths must be included and accurate. Paths must be located relative to where the load file resides. Paths should not include starting periods or ending slashes.

b. An image load/cross reference file containing *only* image document boundaries (i.e. document and page breaks) should be provided with each production in either a DII, LFP, of LOG format. Please note that Nextpoint does *not* support DII Tokens for alternate metadata corresponding to Image, Text, or Native files. A separately formatted metadata load file is required. A data load file should be provided with each production. The file should be compatible with Nextpoint (CSV file type, DAT also accepted). Extracted text and/or OCR text should NOT be embedded in the CSV file, but should rather be provided as a separate, document-level text file. Document-level text file names should contain

the beginning Bates number information of the document. If a document is provided in native format with a placeholder tiff (e.g., spreadsheet files), the text file should contain the extracted text of the native file. Where there are redactions to the text of a document, that text should likewise be redacted in the text file. Text files shall include page breaks indicated by Bates numbers corresponding to the images. Each text file shall be named to match the endorsed (Bates) number assigned to the image of the first page of the document and the path to each text file shall be included in the load file.

a)    <u>Bates Numbering</u>

The Parties agree that productions must be endorsed with sequential Bates numbers in the lower right corner of each image. Bates numbers shall not obliterate, conceal, or interfere with any substantive information on each endorsed document. The Parties will follow the following naming conventions:

Images Files = [Beg_Bates Number].tif or [Beg_Bates Number].jpg.

Native Files = [Beg_Bates Number].ext.

Text File = [Beg_Bates Number].txt.

The Parties will use the following Bates Number format for all productions: "XX#####" or "XXX#####" where "XX" or "XXX" represents the short character abbreviation for the producing Party and ##### represents the 5 digit tracking number assigned to each page of each document in a production set (or in the case of native files, the first Bates number of each document and a cross-reference file or other load file associating it to each page of each document in a production set). An example is listed below.

13

Plaintiffs = PL00001

The Parties will sequentially Bates Number each document in a document family and provide an attachment range for all parent and child relationships encompassing the document family group.

Third party productions received by or subpoenaed by either Plaintiffs or Defendants shall be produced to opposing counsel with Bates Numbers beginning with the last name of the third party or the entity name.  Examples are listed below.

John Doe = DOE00001

ABC Corporation = ABC00001

b)  Form of Production for Paper Documents

The Parties agree to scan hard copy documents in black & white unless color scanning is necessary to understand or use the information contained in the image (e.g., hard copies with redlines, color-coded graphs or charts, printed photographs, etc.).  To the extent possible and on a going-forward basis, the Parties agree to produce paper documents in a manner that accurately represents the organization of the original paper document. Each page of a hard copy document will be scanned as an image.  If a document has multiple pages, the scanned images of each page will be produced in the order maintained in the original document.  Blank post-it notes or tabs will be ignored.

The relationship of documents in a document collection will be scanned to capture them as a designated "family document" (e.g., cover letter and enclosures; binder containing multiple tabbed documents; file folder containing multiple documents with staples, clips or other physical breaks).

### c)   Production Media

Parties will share Production Media up to 25GB electronically. Production sets larger than 25 GB shall be delivered via hard drive unless the Parties otherwise agree.  Parties agree to label each piece of Production Media with: (1) case number, (2) producing Party's name; (3) production date; (4) production volume(s); and (5) Total production Bates range. In addition, the Parties will include an accompanying letter reiterating the aforementioned items.

### 7)   Scope of Privilege and Logging

Pursuant to FRE 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  The Parties agree that for each document withheld on the basis of an asserted claim of privilege or protection, the asserting Party must produce a log pursuant to FRCP 26(b)(5)(A).

Notwithstanding the preceding and in an effort to reduce the time required to prepare a privilege log, the Parties agree not to expressly log: (1) communications solely between attorneys or staff of attorneys and their clients; (2) attorney work product; or (3) any communication between a Party's attorney and any witness required to provide a report under FRCP 26(a)(2)(B) and (C), except that the Parties will disclose communications made discoverable by FRCP 26(b)(4)(C).

### a)   Privilege Log Specifications

The Parties agree to separately identify and log embedded email and email attachments. Furthermore, the Parties agree to include the following information sufficient to establish the basis for each of the elements of the asserted privilege or protection for each item withheld:

i)   The type of document for which the privilege is claimed.

ii)  The name and designation or capacity of the provider/author of the document.

iii) The name and designation or capacity of each recipient.

iv)  The date of the information or the date on which the document was prepared, sent, or shared.

v)   The title and/or description of the information or document.

vi)  The privilege claimed.

**8)      Clawback Protections for Inadvertent Production(s) of Privilege or Protected Materials**

The Parties agree that an erroneous disclosure of information contained within a production that should have been withheld because it is protected by attorney-client privilege, work product protection, or governmental privileges shall be considered to retain its privilege or other protective status and not constitute a waiver thereof so long as: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder takes reasonable steps to rectify the error - asking for its return and/or destruction in a reasonable time of discovering the inadvertent disclosure.  "Reasonable steps" in this context shall mean providing written notification to the opposing party or parties that an inadvertent production was made within 14 days of discovering the erroneous disclosure.  Failure to make a written request within the

reasonable timeframe waives all claims of privilege or protection. This waiver only applies to the specific inadvertently produced item(s) referenced with specificity (including bates number references) and does not operate to waive privilege as to any other production materials.

When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are captured on the receiving Party's Backup System, the receiving Party will over- write those copies according to its established procedures.

If the receiving Party must destroy or delete production media (e.g., CD) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

If the receiving Party intends to challenge the claim of privilege or protection or the inadvertance of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court.

**9)        Duty to Supplement Discovery Responses**

Each Party must supplement or correct its disclosure or response in compliance with FRCP 26(e).

**10)        Costs of Document Production**

Each Party shall bear the costs of producing its own relevant, non-privileged materials and privilege logs.

**11)        Requirement to Confer**

The Parties will confer in a good faith to attempt to resolve disputes before filing any motion about the terms of this Stipulation and Order, compliance with this Stipulation and Order or other discovery matter.

**12)   Miscellaneous**

The Stipulation may be executed in counterparts and may not be enlarged, modified or altered except in a writing signed by each Party.  None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request; rather, such time frames shall be governed by the FRCP.  The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters not addressed herein.

Agreed to by counsel for the Parties:

For the Plaintiffs:

By: _____                    Date:  6/6/2022
Robin N. Pick (admitted *pro hac vice*)
Sieglinde K. Rath (#048131991)
9433 Common Brook Rd. Ste. 208
Owings Mills, MD 21117
(410) 559-6325

For the Defendants:

By: _____                    Date:  6/6/2022
Scott Ketterer
Methfessel & Werbel
2025 Lincoln Highway, Suite 200
P.O. Box 3012
Edison, N.J. 08818
(732) 650-6539

18

IT IS **SO ORDERED** this_____day of_____, 1

_____
United States Magistrate Judge