# Exhibit N



# QBE Specialty Insurance Company
55 Water Street, New York, New York 10041
Home Office: c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota 58501

## PUBLIC OFFICIALS AND EMPLOYMENT LIABILITY COVERAGE
### (CLAIMS MADE BASIS)

Policy No.: QJM01035-05                                             Renewal of: QJM01035-04

## DECLARATIONS

**Item 1.**  **Insured Public Entity:**                **Lead Agent:**

Township of Toms River                    Ocean County Municipal
33 Washington Street                      Joint Insurance Fund
Toms River, NJ 08753                      Attn: Steve Sacco
                                          PERMA Risk Management Services
                                          9 Campus Drive, Suite 216
                                          Parsippany, NJ 07054-4412

**Item 2.**  **Limits of Liability:**

(A)  $2,000,000  Standard: Combined Single Limit per **Claim** (except **Land Use Claims**) and Annual Aggregate.
(B)  $25,000  for defense only of **Claims** based on civil union and or marriage.
(C)  $1,000,000  **Land Use Claim** Limit per **Claim.**

Note that the **Limits of Liability** and **Retention Amount** are reduced or exhausted by **Defense Costs**.

**Item 3.**  **Coinsurance Contribution Percentage and Loss Amount**:

The Coinsurance Percentages apply to the Loss Amounts below.

|     |     | Insured Percentage | **Company** Percentage | Loss Amount |
| --- | --- | --- | --- | --- |
| (A) | Any covered **Claim** other than a **Claim** arising out of a **Wrongful Employment Practice** or a **Land Use Claim** | 20% | 80% | $250,000 |
| (B) | **Claim** arising out of a **Wrongful Employment Practice** | 20% | 80% | $250,000 |
| (C) | **Land Use Claim** | 20% | 80% | $1,000,000 |

**Item 4.**  **Retention Amount:**

| | | |
| --- | --- | --- |
| (A) | Any covered **Claim** other than a **Claim** arising out of a **Wrongful Employment Practice** or a **Land Use Claim** | $20,000 |
| (B) | **Claim** arising out of a **Wrongful Employment Practice** | $20,000 |
| (C) | **Land Use Claim** | $20,000 |

**Item 5.**  **Coverage Period:**   Effective Date:   **January 1, 2021**
                                    Expiration Date:  **January 1, 2022**

each at 12:01 a.m. Standard Time at the address of the **Public Entity** as stated herein.

POLICY NUMBER:   QJM01035-05
SLA Transaction #:   H0695-21-00509

Item 6.  **Extended Reporting Period:**
   (A)   Additional Assessment:        200% of Annual Assessment
   (B)   Additional Period:            12 Months
   (C)   Insured Notification Period:  30 Days

Item 7.  **Public Officials Liability Retroactive Date:**

   1. Provide "full prior acts" coverage to members with five continuous years of membership.
   2. Provide "full prior acts" coverage to new members who have full prior acts coverage in force at time of membership.
   3. Provide prior acts to the existing retroactive date (defined as the retroactive date identified in their expiring or prior policy) for new members that do not have full prior acts coverage or a one year retroactive date, whichever is greater.

Item 8.  **Employment Liability Retroactive Date:**

   1. Members as of 1/1/1997 will have a uniform retroactive date of 10/1/1993. The members' respective retention and coinsurance contribution in effect at the time the **claim** is made will apply. This is based on whether or not the member has an **approved loss control/risk management plan** in place.
   2. Members with effective dates after 1/1/1997 with prior Employment Liability coverage will have a retroactive date of 10/1/1993. All new members with prior coverage will have a six (6) month grace period for approval of a loss control/risk management plan in order to maintain the lower retention and the lower coinsurance contribution.
   3. Members with effective dates after 1/1/1997 with no prior Employment Liability coverage will have a retroactive date that is the same as the date of membership. All new members with no prior coverage will have the higher retention and higher coinsurance percentage until their loss control/risk management program is submitted and approved.

Item 9.  **Notice of Claim to be given to:**

   Summit Risk Services
   Attn:  Alice Ivers
   120 Gibraltar Road, Suite 210
   Horsham, PA 19044
   Email:  newfundclaim@summitrisk.com
   Phone:  215-443-3598     Fax: 215-773-7725

Item 10.  **Endorsements:**   Forms and Endorsements attached at issuance:

   PRU-PO-400001-NJ (02-19) – New Jersey Surplus Lines Stamp
   PRU-PO-200005-NJ (05-18) – Employed Attorney Endorsement –
        Mark Trancone, Esq., Alison Newman, Esq., Raymond Garry Mundy,
        Kenneth B. Fitzsimmons, Anthony Merlino
   PRU-PO-100001-NJ (05-18) – Public Officials and Employment Liability Coverage Form
   PRU-IL-2001-NJ (04-20) – Service of Process Clause – New Jersey

PRU-PO-300002-NJ (04-20)                    © QBE, 2018                          Page 2 of 3

POLICY NUMBER:   QJM01035-05
SLA Transaction #:   H0695-21-00509

Item 11.   **Warranty:**  It is represented and warranted that with regard to a **Claim** arising out of a **Wrongful Employment Practice**, the statements contained in the written application regarding employment liability, a copy of which is on file at the offices of QBE Specialty Insurance Company, hereinafter referred to as the **Company**, and the Declarations, are reaffirmed as of the Effective Date of this policy, and are the basis of employment coverage under the policy and are considered as incorporated in and constituting part of this policy.

Item 12.   **Annual Premium:**              $233,254

This Declarations Page is issued with, and forms a part of, the PUBLIC OFFICIALS AND EMPLOYMENT LIABILITY COVERAGE POLICY.

Todd Jones
President

Mark Pasko
Secretary



This endorsement, effective January 1, 2021 at 12:01 a.m., forms a part of Policy No. QJM01035-05 issued to Township of Toms River by QBE Specialty Insurance Company.

## NEW JERSEY SURPLUS LINES STAMP

| | |
|---|---|
| Policy Number: | QJM01035-05 |
| SLA Transaction #: | H0695-21-00509 |
| Insured Public Entity: | Township of Toms River |

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.



This endorsement, effective January 1, 2021 at 12:01 a.m., forms a part of Policy No. QJM01035-05 issued to Township of Toms River by QBE Specialty Insurance Company.

# EMPLOYED ATTORNEY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    Public Officials and Employment Practices Liability Coverage Form

In consideration of the premium charged, it is agreed that the policy is amended as follows:

It is understood and agreed that **SECTION III - WHO IS AN INSURED**, is amended to include the following employed attorney(s) designated below, but only for a **Claim** arising out of a **Wrongful Act** by such employed attorneys while acting in the scope of their professional duties performed on behalf of the **Public Entity**:

Designated Employed Attorney(s):

Mark Trancone, Esq.

Alison Newman, Esq.

Raymond Garry Mundy

Kenneth B. Fitzsimmons

Anthony Merlino

All other provisions of this policy remain unchanged.



# PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
# CLAIMS MADE AND REPORTED

**NOTICE: THIS COVERAGE FORM PROVIDES CLAIMS MADE AND REPORTED COVERAGE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine your rights, duties, and what is and is not covered.

Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Throughout this policy the words "you" and "your" refer to the **Public Entity**. Refer to **Section III – WHO IS AN INSURED**. The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in bold have special meaning. Refer to **SECTION VIII - DEFINITIONS**.

In consideration of the payment of the assessment, in reliance upon the statements in the written application made a part hereof, and subject to all of the terms of this policy, we agree as follows:

**SECTION I - COVERAGE**

**A. Insuring Agreement**

1. We will pay those sums that the Insured becomes legally obligated to pay as **Damages** because of a **Wrongful Act** (regardless of whether or not such allegations prove to be groundless, false or fraudulent) arising out of the discharge of duties by or on behalf of the **Public Entity** as shown in the Declarations provided always that:

   a. the **Claim**, on account of such **Wrongful Act**, is first made against the Insured and reported to us during the policy period, in compliance with **SECTION VII - CONDITIONS** - Item **A.**, or any applicable reporting period under **SECTION VI - EXTENDED REPORTING PERIODS**;

   b. such **Wrongful Act** took place in the **Coverage Territory**; and

   For purposes of paragraph 1.a. of **SECTION I - COVERAGE**, subsection **A. Insuring Agreement**, if, during the policy period or any applicable reporting period under **SECTION VI - EXTENDED REPORTING PERIODS**, the Insured gives written notice to us, in accordance with **SECTION VII - CONDITIONS** - Item **A.**, of a **Wrongful Act** likely to result in a **Claim**, then any **Claim** that may subsequently be made against an Insured arising out of such **Wrongful Act** shall be deemed to have been made during the policy period or any applicable reporting period hereunder.

2. We will have the right and duty to defend, except where excluded or otherwise outside the scope of coverage of this policy, any **Claim** seeking **Damages** to which this insurance applies. We may, at our discretion, investigate any **Claim**, but:

   a. the amount we will pay for **Damages**, including **Claims Expenses**, is limited as described in **SECTION IV - LIMITS OF LIABILITY**; and

   b. our right and duty to defend ends when we have used up the applicable limit of liability in the payment of judgments, settlements, or **Claims Expenses**.

   No other obligation or liability to pay sums or perform acts or services is covered.

**SECTION II - EXCLUSIONS**

This policy does not apply to:

1. **Criminal Acts**

   any **Damages** arising out of fraud, dishonesty, malicious, and/or a criminal and intentional act or omission, if an investigation, judgment or other final adjudication establishes such a fraudulent, dishonest, malicious, and/or criminal and intentional act or omission was committed by, on behalf of, or at the direction of the insured. However, notwithstanding the foregoing, subject to other terms and conditions of this policy, we will pay for

**Claims Expenses** incurred by the insured up to, but not after, an investigation, judgment or other final adjudication establishes such a fraudulent, dishonest, malicious, and/or criminal and intentional act or omission was committed by, on behalf of, or at the direction of the insured. A defense and indemnification shall be afforded to each Insured against whom no such final determination is made.

2. **Willful Violations**

   any **Damages** arising from the willful violation of any federal, state, or local statute, ordinance, rule, regulation, agreement or judicial or regulatory order, committed by or with the knowledge and consent of any Insured. However, notwithstanding the foregoing, subject to other terms and conditions of this policy, we will pay for **Claims Expenses** incurred by the insured up to, but not after, an investigation, judgment or other final adjudication establishes such a willful violation on the part of the insured. A defense and indemnification shall be afforded to each Insured against whom no such final determination is made.

3. **Statutory or Fiduciary Liability**

   any **Claims** or damages arising from any obligation or duty imposed by:

   a. the Employee Retirement Income Security Act (ERISA);
   b. the Pension Benefit Act;
   c. the Consolidated Omnibus Budget Reconciliation Act of 1988 (COBRA);
   d. SECTION 89 of the Internal Revenue Code
   e. the Occupational Safety and Health Act (OSHA);
   f. the Public Employee Occupational Safety and Health Act (PEOSHA);
   g. the Worker Adjustment and Retraining Notification Act (WARN); or
   h. the Fair Labor Standards Act (FSLA);

   or any amendments thereto, or similar provisions of a federal, state, or local statutory or common law.

4. **Employment Benefits**

   any **Damages** arising out of any Insured's administration or activities in connection with any employment benefit plan or self-insurance fund; provided, however, this exclusion does not apply with respect to Joint Insurance Funds established pursuant to N.J.S.A. 40:A 10-36m et seq.

5. **Pollution**

   a. any **Damages** which would not have occurred in whole or in part but for the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants**, irritants or hazardous substances at any time; or
   b. any **Damages** arising out of any:
      1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any other way respond to, or assess the effects of **Pollutants**; or
      2) **Claim** by or on behalf of a governmental authority or others for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

6. **Asbestos, Silica Dust or Lead**

   a. any disease or any ailment caused by or aggravated by asbestos in any form or silica dust;
   b. the existence of asbestos in any form or silica dust, including the costs in investigations or feasibility studies, or to the costs of testing, monitoring, abatement, mitigation, cleaning, removal or disposal of any property or substance;
   c. lead or the hazardous properties of lead;
   d. remedial investigations or feasibility studies or the costs of testing, monitoring, abatement, mitigation, cleaning, removal, or disposal of lead or any item(s) containing lead;
   e. any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with b. or c. above; or

    f.   any obligation to share **Damages** with or repay someone else who must pay **Damages** in connection with a., b., c., d., or e. above.

**7.   Self-Dealing or Illegal Profit**

any **Damages** arising out of self-dealing or gaining profit or advantage or remuneration to which an Insured is not legally entitled.

**8.   Condemnation**

any **Damages** based upon or arising out of eminent domain, condemnation, inverse condemnation, adverse possession, dedication by adverse use, or temporary or permanent taking, all by whatever name used.

**9.   Bodily Injury, Personal Injury, Advertising Injury or Property Damage**

any **Damages** based upon or arising out of:

    a.   bodily injury including physical injury to any person, death, sickness, disease or any mental anguish associated with or arising from such bodily injury; provided however, this exclusion shall not apply to a **Wrongful Employment Practice** that also alleges emotional distress and mental anguish;

    b.   assault or battery;

    c.   emotional distress or mental anguish; provided however, this exclusion shall not apply to a **Wrongful Employment Practice**

    d.   injury caused by a **Wrongful Act** arising from one or more of the following:

        1)   false arrest, detention or imprisonment;

        2)   malicious prosecution;

        3)   publication or utterance of libel, slander, or disparaging material, or utterance in violation of an individual's right of privacy;

        4)   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        5)   misappropriation of advertising ideas or style of business; or

        6)   infringement of copyright title or slogan;

    provided however, this exclusion shall not apply to a **Wrongful Employment practice**.

    e.   physical injury to tangible property, including all resulting loss of use of that property; or

    f.   loss of use of tangible property that is not physically injured.

**10.   Law Enforcement Activities**

any **Damages** arising out of the law enforcement activities to protect the public or property including the operation of correctional or detention facilities.  This exclusion does not apply to a **Wrongful Employment Practice**.

**11.   War, Strikes, Riots, or Civil Commotion**

any **Damages** due to:

    a.   war, whether or not declared, or any act or condition incident to war; or

    b.   strikes, riots or civil commotion.

War includes civil war, insurrection, rebellion or revolution.

**12.   Failure to Effect and Maintain Insurance**

any **Damages** based upon or arising out of the failure of the Insured to effect, procure or maintain adequate insurance.

**13.   Bonds, Taxes or Construction Contracts**

any **Damages** based upon or arising out of:

    a.   the issuance of bonds;



    b. the improper collection of taxes; or

    c. construction, architectural or engineering contracts.

**14. Prior Insurance**

any **Damages** for which an Insured is entitled to indemnity or payment by reason of having given notice of any circumstance which might give rise to a **Claim** under any policy(ies) which has terminated or expired prior to the inception date of this insurance.

**15. Non-monetary Damages, Fines or Penalties**

any **Claim** solely seeking equitable relief or redress in any form other than money **Damages** or for costs, charges, fees or expense in relation to any **Claim** solely seeking relief or redress in any form other than money **Damages**, or for the costs of the Insured's compliance with the condition of any injunctive or equitable relief, or for any fines or penalties assessed from the failure to comply with any injunctive relief.

**16. Collective Bargaining Agreement**

any **Damages** due to any collective bargaining agreement or breach of that agreement.

**17. Doctors or Health Care Facilities**

any **Damages** arising out of:

    a. an Insured's **Wrongful Acts** as a doctor, physician, surgeon or dentist; or

    b. the premises or operation of any hospital, clinic, or nursing home. This exclusion, however, does not apply to any **Claim** arising out of a **Wrongful Employment Practice.**

**18. Contractual Liability**

any **Damages** the Insured is obligated to pay by reason of assumption of liability in a contract or agreement. This exclusion does not apply to liability for **Damages** that the Insured would have in the absence of the contract or agreement. This exclusion shall not apply to any municipal mutual assistance agreements for fire protection, first aid or other emergency services.

**19. Capital Improvements**

any costs incurred by an Insured to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person.

**20. Workers Compensation**

any liability arising out of any obligation under any workers' compensation, disability benefits or unemployment compensation law, or any similar law. This exclusion, however, does not apply to any **Claim** arising out of a **Wrongful Employment Practice** on account of the filing of a workers' compensation **Claim** or a **Claim** for disability benefits.

**21. Strike and Lock Out**

any liability arising out of a strike, lockout, picket line, replacement, or other similar action resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act or state equivalent.

**22. Racketeer Influence and Corruption Organizations (R.I.C.O.)**

any **Claim** arising out of any actual or alleged violation of the racketeer influence and corrupt organizations act, 18 USC section et seq any amendments thereto, or any rules or organizations promulgated thereunder.

**23. Change in Control**

any **Claim** based upon or arising out of the acts of any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official who takes control of, supervises, manages or liquidates the insured.

**24. Punitive Damages**

any **Claim** seeking punitive or exemplary damages, multiplied damages, fines or penalties.

**25. Electromagnetic**

any **Claim** based upon or arising out of electromagnetic fields, or any other electrical or magnetic waves or radiation.

**26. Nuclear**

any **Claim** arising out of the use, handling, sale, distribution, transport, shipment, planning, maintenance, operation, use, construction, dispersal, storage or disposal of any nuclear, radioactive or fissionable material, or any alleged violation of any environmental statute, regulation, or ordinance with respect to such material, including any site, facility, reactor, or any act, omission, or condition incidental thereto.

**27. Volunteer Emergency Service Organizations**

any **Claim** arising out of any non-emergency activities of a volunteer emergency services organization or any **Claim** which is covered by the Municipal Excess Liability Joint Insurance Fund Volunteer Emergency Services Directors and Officers Liability Policy (Claims Made Basis).

**28. Certain Professional Services**

any **Claim** arising out of a **Wrongful Act** of any attorney, architect, licensed physician, engineer, independent auditor or independent accountant while acting in the scope of his professional duties on behalf of the **Public Entity**.  However, this exclusion shall not apply to any **Claim** arising out of a **Wrongful Act** of accountants or engineers employed full-time by the **Public Entity** while acting on behalf of the **Public Entity**, or attorneys included in the "Employed Attorney Endorsement".  This Exclusion shall not apply to an interim administrator while acting in the scope of their duties on behalf of the **Public Entity**.

**29. Back Wages and Front Pay**

back wages, front pay, overtime, future damages (or other future economic relief), benefits, prerequisites, fringe benefits, payments in connection with an employee benefit plan or collective bargaining agreement, or any other payment, or the equivalent thereof (including liquidated damages), based upon or arising out of a **Claim** alleging a **Wrongful Employment Practice**.  However, notwithstanding the foregoing, subject to other terms and conditions of this policy, we will pay for **Claims Expenses** incurred by the Insured if the **Claim** includes otherwise covered **Wrongful Acts** up to, but not after, there are no longer any covered **Wrongful Acts**.

**30. Civil Union / Marriage**

any **Damages** pertaining to, in whole or in part, the performance, failure to perform or the refusal to perform a marriage or civil union.  Civil union is as defined in New Jersey Statutes, C.37:1-28 et seq.  However, notwithstanding the foregoing, subject to other terms and conditions of this policy, we will pay for **Claims Expenses** incurred by the insured, which such **Claims Expenses** shall not exceed the Limit of Liability for **Civil Union / Marriage Claims Expenses** in the Declarations.

**31. Breach of Contract**

any damages arising out of the breach of any contract whether written, oral or implied.  However, this exclusion shall not apply to a **Wrongful Employment Practice**.

## SECTION III - WHO IS AN INSURED

Each of the following is an Insured:

1. The **Public Entity** named in the Declarations, Item 1, which is legally constituted and incorporated as of the effective date of this policy, including its government body, departments and units.

2. Your lawfully elected, appointed or employed **Public Officials** or members, past, present and future, but only while acting solely within the course and scope of his or her duties and responsibilities on behalf of the **Public Entity**.

3. Your employees, whether in the singular or plural, but only while acting solely within the course and scope of his or her duties and responsibilities on behalf of the **Public Entity**.

4. Any person(s) providing volunteer services for you at your request and operating under your direction and control, including any person under Title 34 N.J.S.A. 34.15-74;

5. Any person(s) providing services for you under municipal mutual assistance agreements, whether in the singular or plural, but only while acting solely within the course and scope of his or her duties and responsibilities on behalf of the **Public Entity**.

6. The estates, heirs, legal representatives or assigns of the Insured who are deceased at the time of the **Wrongful Act(s)** upon which a covered **Claim** is based.

7. The legal representatives or assigns of the Insureds who are incompetent, insolvent or bankrupt.

8. Person(s) designated by the Insured to serve on a designated outside entity, provided that the activities are in the course and scope of serving on the designated outside entity, the outside entity is tax exempt, the appointment is based solely on the person's being an insured of the **Public Entity**, and the person is directed by the **Public Entity** to serve on the outside entity.

9. Any Business or Special Improvement District affiliated with the **Public Entity** for which the **Public Entity** has submitted a request to, and received written confirmation from, the **Lead Agent**.

Unless specifically endorsed herein, Insured does not mean, and coverage does not apply to, any one of the following boards, commissions or units: boards of education, hospitals, or nursing homes.

## SECTION IV - LIMITS OF LIABILITY

Regardless of the number of Insureds covered under this policy or the number or claimants or the number of **Claims** made, our liability is limited as follows:

1. The Limits of Liability shown in the Declarations, Item 2(A), is the most we will pay under this policy. For the purpose of determining the annual aggregate Limits of Liability of the Company for the Extended Reporting Period provided for under this policy, we shall combine the total of monies paid by the Company on behalf of the Insured during the immediately preceding Coverage Period plus the total of monies paid by the Company on behalf of the Insured during the Extended Reporting Period, with said combined total not to exceed the Limits of Liability set forth in Item 2 of the Declarations for this policy. As respects Items 2(A), 2(B) and 2(C) of the Declarations, the Company's liability under this policy shall apply only to that part of each loss which is in excess of the Retention Amount set forth in Item 4 of the Declarations for this policy and such Retention Amount shall be borne by the Insured.

2. Subject to subsection 1. above, the Combined Single Limit per **Claim** is the most we will pay for all **Damages** arising out of any one **Wrongful Act** covered by this policy, unless the **Claim** is a **Land Use Claim**, which shall be subject to subsection 3. below. **Claims** based on and arising out of the same act or interrelated acts of one or more Insureds shall be considered to be a single **Claim**, and such **Claim** shall be deemed to have originated in the earliest Coverage Period in which a **Claim** is first made against any Insured.

3. The **Limit of Liability** in Item 2(C) of the Declarations is the most we will pay for any single **Land Use Claim** and the most we will pay as the policy Annual Aggregate Limit of Liability for all **Land Use Claims**. The Limit of Liability shown in Item 2(C) shall be part of, and not in addition to, the Annual Aggregate **Limit of Liability** set forth in Item 2(A) of the Declarations.

4. The **Limit of Liability** in Item 2(B) of the Declarations is the most we will pay for any single **Claim** and the Annual Aggregate Limit of Liability for all **Claims** subject to Item 2(B) of the Declarations. The Limit of Liability shown in Item 2(B) shall be part of, and not in addition to, the Annual Aggregate **Limit of Liability** set forth in Item 2(A) of the Declarations.

## SECTION V - COINSURANCE AND RETENTIONS

**A. Coinsurance**

The Insured and the Company shall participate with regard to a loss subject to the percentages and Loss Amounts reflected in Item 3 of the Declarations.



Except in the case of a **Land Use Claim**, the participation of the Insured and the Company on the coinsurance contribution percentage as set forth above is part of the Limits of Liability, and is not in addition to the Limits of Liability as set forth in Item 2(A) of the Declarations.  In the case of a **Land Use Claim**, the coinsurance contribution of the Insured is not part of the Limits of Liability, and does not diminish the Limits of Liability reflected in Item 2(C) for a **Land Use Claim**.

The coinsurance contribution percentage of the insured does not apply to the Limits of Liability as set forth in Item 2(B) of the Declarations.

Your Coinsurance Percentages and Loss Amount contemplate your compliance or non-compliance with an **Approved Risk Management/Loss Control Plan.**

**B. Retention**

The retention amounts stated in Item 4. of the Declarations are applicable to each **Claim** and shall be subtracted from the total amount of **Damages** including: (1) payments for **Damages** and (2) investigation, adjustment, defense and/or appeal expenses (whether or not payments for **Damages** are made) resulting from each **Claim**.  If more than one **Claim** results from the same or related **Wrongful Acts**, then only one retention amount will apply.

We are only liable for the difference between such retention amount and the amount otherwise applicable to a **Claim**. If we pay your portion of any retention, you will reimburse us immediately upon our request.

**SECTION VI - EXTENDED REPORTING PERIODS**

**A**. We will provide one or more extended reporting periods as described below.

**B**. The extended reporting periods do not extend the policy period or change the scope of coverage provided under this policy, and apply only to a **Claim** for **Damages** arising out of **Wrongful Acts** that occur before the end of the policy period.

**C**. The extended reporting periods do not reinstate or increase the Limits of Liability.

**D**. A Basic Extended Reporting Period of sixty (60) days from the effective date of expiry or cancellation or nonrenewal of this policy is automatically provided without an additional charge. Subject to the terms of this policy, the Basic Extended Reporting Period applies to **Claims** for **Damages** that are first made against an Insured during the policy period and reported to us in accordance with **SECTION VII - CONDITIONS** - Item **A**., no later than the end of the Basic Extended Reporting Period. The Basic Extended Reporting Period does not apply to a **Claim** covered under any other insurance purchased subsequent to, or to replace, this policy.

**E**. If this policy is canceled or not renewed for any reason other than nonpayment of assessment or any other amount owed to us, an Optional Extended Reporting Period will be offered to you, subject to the payment of additional assessment, and shall take effect on the effective date of cancellation or nonrenewal of this policy. The Optional Extended Reporting Period will remain in effect for a period of one year. Subject to the terms of this policy, the Optional Extended Reporting Period applies to a **Claim** for **Damages** reported to us, in accordance with **SECTION VII - CONDITIONS** - Item **A**., no later than the end of the one-year purchased Optional Extended Reporting Period. Nonrenewal by us shall mean the refusal by us to renew the policy on any terms. Nonrenewal by us shall not mean a change in assessment, retentions, Limits of Liability or other terms.

The additional assessment for the one-year Optional Extended Reporting Period will be 200% of the expiring annual assessment.

We must receive a written request from you, together with payment of the additional assessment due, within thirty (30) days after the effective date of cancellation or nonrenewal of this policy if you wish to purchase the one year Optional Extended Reporting Period. The Optional Extended Reporting Period will not go into effect unless you pay and we acknowledge receipt of the additional assessment when due. Once in effect, the Optional Extended Reporting Period may not be canceled and the assessment for the Optional Extended Reporting Period is fully earned.

The Optional Extended Reporting Period does not apply to Claims covered under any other insurance purchased subsequent to, or to replace, this policy.

**SECTION VII - CONDITIONS**

A. **Duties in the Event of a Wrongful Act or Claim**

1. If, during the policy period, you become aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this policy, and if you give written notice to us during the policy period, the Automatic Reporting Period, or, if elected, the Optional Extended Reporting Period of:

    a. the identity of the potential claimants;

    b. a description of the anticipated **Wrongful Act** allegations;

    c. the identity of the Insured allegedly involved;

    d. the circumstances by which the Insured first became aware of the Wrongful Act;

    e. the consequences which have resulted or may result; and

    f. the nature of the potential monetary damages;

    then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by us. No coverage is provided for fees, expenses, and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

2. If a **Claim** is made against any insured, you must:

    a. promptly record the specifics of the **Claim** and the date received; and

    b. notify us promptly.

3. You and any other involved Insured must:

    a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **Claim**;

    b. authorize us to obtain records and other information;

    c. cooperate with us in the investigation, settlement, or defense of the **Claim**; and

    d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

B. **Legal Action Against Us**

No person or organization has a right under this policy:

1. to join us as a party or otherwise bring us into a **Suit** asking for **Damages** from an Insured; or

2. to sue us under this policy unless all terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but we will not be liable for **Damages** that are not payable under the terms of this policy or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

C. **Other insurance**

If other insurance in any form and by whatever name known is available to the insured for a **Wrongful Act** covered by this policy, the insurance provided by this policy shall apply in excess of such other insurance, whether or not valid or collectible.

D. **Material Representations**

By accepting this policy, you represent and agree as a condition to coverage:

1. that the statements in the Declarations are accurate and complete;

2. that the statements made in the application, attachments, and any other materials submitted are true and are the basis of this coverage and are to be considered as incorporated into and constituting a part of this policy;

3. that the statements made in the application, attachments, and any other material submitted are representations and that such representations are deemed material to the acceptance of the risk or the hazard assumed by us under the policy and that this policy is issued in reliance upon the truth of such representations; and

4. that in the event that the application, including attachments and any other materials submitted, contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by us, this policy in its entirety shall be void and of no effect.

With respect to any declarations and statements on which the coverage is based, no statement, declaration or knowledge by any Insured shall be imputed to any other Insured for the purpose of determining if coverage is available.

**E. Separation of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the **Public Entity**, this policy applies:

1. as if each Insured were the only Insured; and
2. separately to each Insured against whom a **Claim** is made or **Suit** is brought.

**F. Transfer of Rights of Recovery Against others to Us**

If the Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring legal action or transfer those rights to us and help us enforce them.

**G. Assignment**

This policy may not be assigned by you to anyone.

**H. Sovereign Immunity Defense**

We will use the defense of sovereign immunity, to which you may be entitled as a public entity, only when you agree with us in its use. If you do not agree with us in using the defense of sovereign immunity, you release us from all liability because of our failure to raise such defense.

**I. Consent to Settle**

We will consult with you when we settle a **Claim**. If you refuse to consent to any settlement offer we receive and you elect to contest the **Claim** or continue any legal proceeding in connection with such **Claim**, our liability will not exceed the settlement offer plus supplementary payments incurred as of the date of such refusal.

**J. Cancellation**

Any cancellation of this policy is expressly subject to the requirements of the laws of the State of New Jersey, including those regulations currently codified in N.J.A.C. 11:15-2 adopted by the New Jersey Commissioner of Insurance pursuant to the authority of N.J.S.A. 17:1-8.1, N.J.S.A. 17:1C-6(e) and N.J.S.A. 40A:10-36 et seq. and as hereafter amended. This policy may be cancelled by the Insured by surrender thereof to the Company or any of its authorized agents and only in accordance with the requirements for withdrawal from the Company as set forth in the aforesaid statutes, rules and regulations and the Company's bylaws adopted thereunder. If the Insured cancels, its liability for any further assessments shall be computed in accordance with the aforesaid rules and regulations.

If the Company cancels, it shall mail to the Insured, at the last mailing address known by the Company, written notice stating when not less than 30 days thereafter such cancellation shall be effective. Subject to the aforesaid rules and regulations, this policy may also be cancelled by not less than 10 days notice when the cancellation is being effected by reason of the Insured's nonpayment of assessment.  The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the coverage period. If the Company cancels, earned assessment shall be computed as provided in the aforesaid rules and regulations. Assessment adjustment may be made either at the time cancellation is effected or as soon as practicable, but payment or tender of unearned assessment is not a condition of cancellation.

**K. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The **Public Entity** shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**L. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**M. Inspections and Surveys**

We have the right but are not obligated to make inspections and surveys at any time. We will give you reports on the conditions we find and recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the assessments to be charged. We do not make safety inspections.

We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions are safe or healthful, or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which make insurance inspections, surveys or reports.

**N. Assessments**

The first **Public Entity** shown in the Declarations is responsible for the payment of all assessments and will receive any return assessments.

**O. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Insured.

**P. Eligibility**

It is expressly recognized and agreed the **Public Entity** named in the Declarations is required to be a member of the **Lead Agent** as a condition of eligibility for this policy and, in the event the Insured withdraws from or is terminated or expelled from the **Lead Agent**, this policy shall be cancelled and terminated as of the effective date of the withdrawal, termination or expulsion.  Any such withdrawal, termination or expulsion from the **Lead Agent** shall be effectuated only in accordance with the **Lead Agent's** bylaws and risk management plan as approved pursuant to the aforementioned authorizing statutes and regulations.

**SECTION VIII - DEFINITIONS**

A. **Approved Risk Management/Loss Control Plan** means

1. the Insured **Public Entity** has developed, and is following a program for risk management of employment liability **Claims** that has been approved and accepted by the **Municipal Excess Liability Joint Insurance Fund,**

2. the Insured **Public Entity** is updating its **Approved Risk Management/Loss Control Plan** on an annual basis, and has received an Attorney's Certification for its Employment Practices Loss Control Plan which has been signed by the **Public Entity's** attorney on an annual basis and in accordance with current **Municipal Excess Liability Joint Insurance Fund** requirements, and

3. the Insured **Public Entity** has completed **Employment Practices Training.**

B. **Claim** means:

1. a written demand for **Damages** or a notice advising an Insured of an intent to sue;

2. a notice of an arbitration proceeding to which we agree;

3. a civil proceeding commenced by the service of a summons, complaint or similar pleading; received by an Insured alleging a **Wrongful Act;**

4. a complaint or charge filed with the Equal Employment Opportunity Commission (EEOC), New Jersey Division of Civil Rights (DCR), or similar federal, state or local government agency;

5. a **Land Use Claim**;

6. any appeal from the final decision of the Insured based upon or arising out of the internal civil service or administrative procedures of the Insured; or

7. a **Suit**.



More than one **Claim** brought by persons or entities arising out of the same **Wrongful Act** or a series of acts all related to a single **Wrongful Act** shall be treated as a single **Claim** and shall be deemed to have been made at the time that the first **Claim** is made against any Insured.

C. **Claims Expenses** means:

1. reasonable and necessary fees charged by any attorney designated by us to defend the Insured;
2. reasonable and necessary fees charged by any attorney designated by the Insured with our written consent.
3. other reasonable and necessary fees, costs and expenses resulting from investigation, adjustment, defense and appeal (other than premiums on appeal bonds and the cost of bonds to release attachments) of a **Claim** if incurred by the Insured.
4. premiums on appeal bonds in any such **Claim** and the cost of bonds to release attachments, but only for bond amounts not exceeding an amount equal to the limit of liability.  We do not have an obligation to furnish any such bonds.
5. all reasonable expenses incurred by any Insured at our request to assist us in the investigation or defense of the **Claim**, including actual loss of earnings up to $100 a day because of time off from work.
6. all costs taxed against the Insured in the **Suit**.

**Claims Expenses** shall not include salary expense or other charges relating to the Insured.

**Claims Expenses** also shall not include any amounts in excess of the applicable and available Limits of Liability of this policy, as set forth in the Declarations.

D. **Coverage Territory** means anywhere in the United States or its territories provided that the damage or injury arises out of discharge of duties as a **Public Entity** and that any **Suit** is brought against the Insured within the United States of America, its territories or possessions, Puerto Rico or Canada.

This policy shall not apply to any risk which would be in violation of the laws of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, and Commerce Department.

E. **Damages** shall mean those amounts that the Insured becomes legally obligated to pay for **Claims** arising out of a **Wrongful Act** and shall include **Claims Expenses. Damages** includes all interest on the full amount of any judgment that accrues after entry and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Liability. **Damages** also includes an award of an opposing party's attorney fees.

**Damages** shall not include

1. common law, statutory, or regulatory fines or penalties.
2. any amount not indemnified by the Insured for which the Insured is absolved from payment by reason of any covenant, agreement or court order;
3. matters uninsurable under the law pursuant to which this policy is construed;
4. the employment reinstatement of the claimant by the Insured or the continued employment of the claimant; or
5. harm or damages caused intentionally by an Insured.
6. Back wages, front pay, overtime, future damages (or other future economic relief), benefits, prerequisites, fringe benefits, payments in connection with an employee benefit plan or collective bargaining agreement, or any other payment, or the equivalent thereof (including liquidated damages), based upon or arising out of a **claim** alleging a **Wrongful Employment Practice**.

F. **Employment Practices Training** means the Insured **Public Entity** has made personnel practices training mandatory for supervisory and managerial personnel and has also made it available to all employees.

G. **Land Use Claim** shall mean a written demand for damages or notice advising an insured of intent to sue, a notice of an arbitration proceeding, a civil proceeding commences by the service of a summons, complaint or similar pleading arising out of any land use planning and/or municipal zoning decision or activity of any kind, or any allegation of an act, error, omission or breach of duty of an Insured arising out of any land use planning and/or municipal zoning decision or activity of any kind.



- H. **Lead Agent** shall mean the Joint Insurance Fund named on the Declarations Page as organized and created pursuant to the provisions of L. 1983 c.372 (N.J.S.A. 40A:10-36) et seq.

- I. **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, electromagnetic radiation, or waste materials, which includes materials to be recycled, reconditioned or reclaimed.  **Pollutants** shall also mean any other air emission, odor, wastewater, oil or oil products, infectious or medical waste, asbestos or asbestos products, and any noise.

- J. **Public Entity** shall mean only that Municipality, Governmental Body, Department, or Unit, which is named in the Declarations and is legally constituted at the Effective Date of this policy.

- K. **Public Official** shall mean all persons who were, now are or shall be lawfully appointed or elected officials of the Insured while acting within the scope of their official duties.  The term **Public Official** shall include members of such commissions, boards or other units operating by and under the jurisdiction of such governing body and within an apportionment of the total operating budget of the Insured, while acting within the scope of their official duties.  The term **Public Official** shall also include employee and **Volunteers** as may be responsible to the governing body or to its commissions, boards or other units.  **Public Official** does not mean and does not apply to any officials, members or employees of any hospital, boards of education or colleges, or any person working on a retainer or any independent or professional services contractors.  **Public Official** shall also mean an interim administrator while acting in the scope of their duties on behalf of the named insured.

- L. **Retroactive Date** means the dates shown in Items 7 and 8 of the Declaration Page.  No coverage will be afforded for any **Wrongful Acts** occurring in whole or in party prior to this date.

- M. **Suit** means a civil proceeding in which **Damages** to which this insurance applies are alleged. **Suit** includes:

    1. an arbitration proceeding in which such **Damages** are claimed and to which you must submit or do submit with our consent; or

    2. any other alternative dispute resolution proceeding in which such **Damages** are claimed and to which you submit with our consent.

- N. **Volunteer** means any person whose services are uncompensated and whose activities are authorized, directed and supervised by, and for the benefit of, the **Public Entity**.  **Volunteer** does not include any person performing services which are covered by, connected with, or supervised by any court, penal or law official or institution.

- O. **Wrongful Act** means a negligent act, error or omission, or **Wrongful Employment Practice**.

- P. **Wrongful Employment Practice** means any of the following conduct or acts committed against a current or former employee, **Volunteer**, or applicant for employment of the **Public Entity;**

    1. employment-related discrimination, including employment-related discrimination in connection with hiring, promotion, advancement or opportunity demotion, discipline, pay, or termination on the basis of race, color, sex, age, religion, national origin, disability, sexual orientation, marital status, or pregnancy, or any conduct that violates any federal, state, or local law prohibiting employment discrimination;

    2. workplace harassment, including unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature that (1) is made an explicit or implied term or condition of employment; or (2) is used as a basis for employment decisions; or (3) creates a work environment that is intimidating, hostile, or offensive; or

    3. any of the following employment-related actions: wrongful termination of employment, employment-related misrepresentation, failure to employ, failure to promote, wrongful discipline, wrongful deprivation of career opportunity, failure to grant tenure, negligent evaluation, invasion of privacy, employment-related defamation, wrongful infliction of emotional distress, retaliatory treatment, and/or violation of civil or constitutional right of any employee that creates a cause of action for damages.



This endorsement, effective January 1, 2021 at 12:01 a.m., forms a part of Policy No. QJM01035-05 issued to Township of Toms River by QBE Specialty Insurance Company.

## SERVICE OF PROCESS CLAUSE – NEW JERSEY

QBE Specialty Insurance Company (the "Company") hereby designates the Commissioner of Banking and Insurance of the State of New Jersey as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 as the person to whom the Commissioner shall mail process.