**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **BAIS BRUCHA INC.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, NEW JERSEY**, *et al.*,<br><br>Defendants. | Civil Action No. 21-3239 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Second Motion for Partial Judgment on the Pleadings filed by Plaintiffs Bais Brucha Inc. and Rabbi Mordechai Sekula (collectively, "Plaintiffs"). ("Motion", ECF No. 91.) Plaintiffs filed a brief in support of the Motion. ("Moving Br.", ECF No. 91-1.) Defendants the Township of Toms River, New Jersey ("Township") and Township of Toms River Zoning Board of Adjustment ("ZBA") (collectively, "Defendants") opposed the Motion. ("Opp'n Br.", ECF No. 99.) Plaintiffs filed a reply brief. ("Reply", ECF No. 103.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT-IN-PART and DENY-IN-PART Plaintiffs' Motion for Partial Judgment on the Pleadings.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

A.     **FACTUAL BACKGROUND**

This action arises out of Plaintiffs' allegations that Defendants prohibited Plaintiffs from constructing a *shul*, or synagogue[1], on their property located at 1191 and 1181 Hickory Street in the Township[2] (the "Subject Property") by enacting discriminatory land use regulations in violation of Plaintiffs' civil rights under the Free Exercise and Equal Protection Clauses of the United States Constitution, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.*, ("RLUIPA").  (First Amended Complaint, "FAC" ¶ 1, ECF No. 61.)

Plaintiffs purchased the Subject Property, located in the Township's Rural Residential zoning district ("RR Zone"), in December of 2017 for the purpose of constructing a small *shul*. (*Id.* ¶¶ 2, 54.)  Plaintiffs allege that Defendants—in response to a rising Orthodox Jewish community in the Township—engaged in an orchestrated campaign to prevent the growth of the Orthodox Jewish community by passing targeted and discriminatory zoning regulations to prevent synagogue construction.  (*Id.* ¶ 3.)  Additionally, Plaintiffs claim the Township maintains a significant hostility toward the Orthodox Jewish community which underlies Defendants' discriminatory actions.  (*Id.* ¶¶ 5–6, 98–149.)

---

[1] In their Answer, Defendants deny Plaintiffs' allegation that "Plaintiff Bais Brucha is a religious assembly or institution, as that term is used in [RLUIPA]." (FAC ¶ 218; Answer ¶ 218.) Plaintiffs, however, contend that the Township admitted in the Consent Order that "a house of worship is a 'religious assembly or institution' or 'structure' under RLUIPA"  and that § 348-2.3 of the Code defines Churches or places of worship as "congregations, . . . synagogues (including shuls)" as well as "other similar designations." (Moving Br. at 15; Consent Order ¶ 26.) Notably, Defendants do not oppose any of these points in their Opposition. Accordingly, the Court considers it undisputed that Plaintiff Bais Brucha is a religious assembly.

[2] The Court similarly rejects Defendants' denial that Defendant ZBA is not a government under RLUIPA.  (FAC ¶ 217; Answer ¶ 217.) However, Defendants do not deny that the ZBA is organized under State law, i.e., N.J.S.A. § 40:55D-69, and continued under Section 348-3.2 of the Code. (FAC ¶ 13; Answer ¶ 13.) Nor do Defendants oppose Plaintiffs' contention that under RLUIPA, "under RLUIPA, a 'government' is defined as '(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[] . . . .'" (Moving Br. at 14 (citing 42 U.S.C. §§ 2000cc-5(4)(A)).)

Chapter 348 of the Township's municipal code ("Code") regulates land use.[3]   (*Id.* ¶ 58.) The Code divides the Township into various zones and restricts certain types of land use within each zone. (*See id.* ¶¶ 59–68.) The Code indicates which land uses are categorized as a "permitted use" or a "conditional use." (*See id.* ¶¶ 59–63.) If a land use is listed as a "conditional use," the Code provides standards required for that land use. (*See, e.g., id.* ¶¶ 59.) "A use that is not specifically allowed or permitted in a particular zone is a prohibited use." (*Id.* ¶ 60 (citing Code § 348-2-3.) Notably, in March of 2009, by way of Ordinance 4181-09, the Township Council removed "churches and places of worship" as a conditional use from several zones, including the Rural Residential Zone ("RR Zone") and other residential zones, R-800, R-400, R-400C, and R/C-3. (*Id.* ¶¶ 65–66.) On August 26, 2020, Bais Brucha applied with the Township for a zoning permit ("Application") to construct a *shul* on a vacant lot adjacent to the Subject Property. (*Id.* ¶ 80.) On September 24, 2020, the zoning application was denied as "[u]se not permitted in RR Zone." (*Id.* at ¶ 88.) The ZBA later affirmed the denial, which Plaintiffs allege was a final decision without additional avenues of administrative appeal within the Township. (*Id.* ¶¶ 89–94.)

At the time Plaintiffs submitted the Application, § 348-9.5 of the Code permitted churches and places of worship (collectively, "places of worship") as conditional uses in certain zones only. (*Id.* ¶ 59.) As a conditional use in these specified zones, places of worship were subject to the following restrictions, among several others: (1) a ten-acre minimum lot, (2) a 300-foot minimum lot width, (3) a maximum lot building coverage of 15%, and (4) a maximum impervious coverage of 40%. (*Id.*) Plaintiffs identify the lot area, lot width, and maximum impervious coverage

---

[3] There appears to be no dispute that the Township's denial of Plaintiffs' zoning permit under the Township's Code constitutes a "land use regulation" as defined in the RLUIPA. *See* 42 U.S.C. § 2000cc 5(5) ("The term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.").

requirements for non-religious assembly and institutional uses and allege that the Code imposed stricter requirements on places of worship than other uses. (*See id.* ¶¶ 68, 76, 78 (listing minimum lot and lot width requirements, and maximum impervious coverage requirements for nonreligious uses).)   As such, Plaintiffs allege that the Code and the various subsequent Ordinances (collectively, the "Land Use Regulations") "discriminated against religious land uses and in favor of various nonreligious assembly." (*Id.* ¶ 79.)

Since Plaintiffs filed this action, the Township enacted Ordinance 4700-21, which amended various zoning regulations. (*Id.* ¶ 160.)  On December 9, 2018, the United States Department of Justice ("DOJ") opened an investigation into the Code pertaining to religious assemblies. (Consent Order, Def.'s Ex. D ¶ 1, ECF No. 99-1.)  The Township "cooperated fully" with the investigation. (*Id.*)  On September 17, 2020, the DOJ completed its investigation of the Township's zoning and land use practices under RLUIPA and filed a complaint in federal district court against the Township alleging discriminatory zoning laws against houses of worship.   (FAC ¶ 150.) Specifically, the complaint alleged that the Land Use Regulations "impose[d] unreasonable limits on places of worship within the Township," "treat[ed] religious assemblies and institutions less favorably than nonreligious assemblies and institutions," and "impose[d] a substantial burden on the exercise of religion by religious communities, including the Orthodox Jewish community." (Consent Order ¶¶ 1–2.)

On March 11, 2021, the DOJ and the Township entered into a Consent Order that required the Township to amend its land use regulations to comply with RLUIPA. (FAC ¶¶ 154–59.)  The Amended Regulations allow places of worship as conditional uses in the RR Zone and also amend the conditional use requirements for places of worship; specifically, the amendments lowered the minimum acreage requirement from ten to two acres, changed the minimum lot width requirement

to 300 feet on lots greater than four acres and 200 feet on lots four acres or less, and changed the maximum impervious coverage requirement to 40% on lots greater than four acres and 50% on lots four acres or less. (*See id.* ¶¶ 143 n.3, 146 n.4, 182.)

### B.   PROCEDURAL HISTORY

On February 23, 2021, Plaintiffs filed a Complaint alleging violations of the Free Exercise Clause, Equal Protection Clause, RLUIPA, and the New Jersey Law Against Discrimination ("NJLAD"). (Compl., ECF No. 1.)  On January 9, 2023, the Court dismissed Plaintiffs NJLAD claim for lack of subject matter jurisdiction. *Bais Brucha Inc. v. Twp. of Toms River*, Civ. No. 21-3239, 2023 WL 128812 (D.N.J. Jan. 9, 2023).  On January 13, 2023, Plaintiffs filed the FAC. (ECF No. 61.) Defendants filed on Answer on January 23, 2023. (Answer, ECF No. 63.)  Counts I–IV of the FAC assert violations of RLUIPA, Count V asserts a violation of the Fourteenth Amendment Equal Protection under 42 U.S.C. § 1983, and Count VI asserts a violation of the First Amendment Free Exercise of Religion under 42 U.S.C. § 1983.  (FAC ¶¶ 228–39.)  Plaintiffs' Motion only seeks a judgment as to Counts III (violation of RLUIPA's Equal Terms Provision), Count IV (violation of RLUIPA's Exclusion and Limits Provision), and Counts V and VI (Constitutional claims). (*See* Moving Br. at 10.)  Plaintiffs seeks declaratory relief that the Land Use Regulations and denial of Plaintiffs' application are void, invalid, and unconstitutional; injunctive relief preventing the Township from applying the Land Use Regulations to Plaintiffs; an order reversing the ZBA's denial of the permit; and compensatory damages.  (FAC at 55–57.)

## II.   **LEGAL STANDARD**

Judgment on the pleadings under Rule 12(c) will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Mach. Tool, Inc.,* 40 F.3d 52, 54 (3d Cir. 1994) (internal

citations and punctuation omitted).   In reviewing a Rule 12(c) motion, the Court "must view the facts in the pleadings and the inferences therefrom in the light most favorable to the nonmoving party." *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988) (internal quotations and citation omitted).   A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion.   *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

Specifically, where a plaintiff brings the motion for judgment on the pleadings, "the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law."  *United States v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963).   In other words, "the question is whether the facts alleged in the answer are material in the sense that, if proved, they will constitute a legal defense to the plaintiff's claim."  *Id.* at 352–53.

## III.   **DISCUSSION**

### A.   **DEFENDANTS' JUSTICIABILITY ARGUMENTS**

Before reaching the merits of Plaintiffs' claims, the Court first addresses Defendants' arguments that the claims are moot and not ripe.

Plaintiffs specifically state that their Motion is based on "the land use regulations as they existed at the time of Plaintiffs' Application and its subsequent denial and the ZBA's final affirmance of that denial." (Moving Br. at 9.)  To determine whether Plaintiffs' claims are moot or ripe, the Court must consider whether each claim is a facial or as-applied challenge.  *See Khal Anshei Tallymawr, Inc. v. Twp. of Toms River, N.J.*, Civ. No. 21-2716, 2021 WL 5757404, at *4 (D.N.J. Dec. 3, 2021); *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 624–26 (3d Cir. 2013).

The FAC explicitly pleads its claims under RLUIPA (Counts III and IV) and Free Exercise (Count VI) as both facial and as-applied challenges. (FAC ¶¶ 233, 235, 239.)  Unlike Counts III, IV, and VI, the FAC pleads an Equal Protection claim only as an as-applied challenge. (Id. ¶ 237.)

1.    Mootness

Defendants argue that the Motion must be denied as moot because the Amended Regulations alleviate the burdens of the Land Use Regulations at issue and the now-defunct Land Use Regulations will no longer be enforced or revived.[4]  (Opp'n Br. at 17–18.)  Plaintiffs do not dispute that Defendants amended the Land Use Regulations at issue. (Moving Br. at 9.)  Instead, Plaintiffs underscore that the Township's amendment of the Land Use Regulations does not moot Plaintiffs' claims because the FAC contains a prayer for damages. (Reply at 7.)

The Third Circuit has explained that while a corrective amendment to challenged ordinances moots a party's claim for injunctive or declaratory relief, claims for compensatory damages remain viable. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260–61 (3d Cir. 2007); *see also Khal Anshei*, 2021 WL 5757404, at *6 ("[A] 'viable claim for damages' may 'save' a case from mootness.").

Accordingly, the Court finds that Plaintiffs' claims for damages as to the (1) facial challenges[5] under RLUIPA and Free Exercise (Counts III, IV, VI) and (2) as-applied challenges under RLUIPA, Equal Protection, and Free Exercise are not moot. *See Khal Anshei*, 2021 WL 5757404, at *6.

---

[4] Defendants do not themselves seek affirmative relief based on their mootness arguments.  Nevertheless, the Court is obligated to fully consider mootness and its implication on its jurisdiction.  *See Donovan ex rel. Donovan v. Punxutaney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003).

[5] Although the FAC does not plead a facial Equal Protection challenge, Plaintiffs' brief the Equal Protection challenge as both a facial and as-applied challenge. (*See generally* Moving Br. and Reply Br.)  Even if the FAC pleaded a facial Equal Protection challenge, the claim would be moot: "'damages are not a proper remedy' for facial challenges on Equal Protection grounds; thus, the amendment of the challenged features of a regulation renders facial Equal Protection challenges moot regardless of whether the plaintiff sought damages." *Khal Anshei*, 2021 WL 5757404, at *5 (citing *CMR D.N. Corp.*, 703 F.3d at 624–25).

2.    Ripeness

Defendants also argue that Plaintiffs' claims are not ripe for review.[6]  The crux of Defendants' opposition to the Motion is that Plaintiffs "incorrectly assert that the denial of the appeal to the Zoning Board to approve its development permit was final and that Plaintiff had no further avenues to appeal the decision." (Opp'n Br. at 24.)  In this light, Defendants contend that: (1) Plaintiffs could have appealed the ZBA's decision by way of an action in lieu of prerogative writ under N.J.C.R. 4:69-1–7; and (2) Plaintiffs "could have (but did not and to date have not) filed for variances seeking relief from the various portions of the zoning ordinances."[7]  (*Id.* at 3.)

The Court treats these challenges as a ripeness issue.  "Ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority." *Congregation Anshei Roosevelt v. Plan. and Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 216 (3d Cir. 2009) (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)).  The basic rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).

Generally, a district court determines ripeness for land use disputes by the following two-prong test: (1) whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" and (2) whether the plaintiff exhausted the state's procedures for obtaining just compensation for a

---

[6] As with mootness, Defendants do not themselves seek affirmative relief based on their ripeness arguments. Nevertheless, the Court is likewise obligated to fully consider ripeness and its implication on its jurisdiction. *See Nextel Commc'ns of Mid-Atl., Inc. v. City of Margate*, 305 F.3d 188, 192 (3d Cir. 2002)
[7] Defendants, both explicitly and implicitly, argue that Plaintiffs cannot assert RLUIPA or constitutional claims "[a]t this stage in the matter" because they have failed to follow the proper procedure to obtain a permit. Though Defendants do not specifically refer to their position in the context of the ripeness doctrine, the Court will address Defendants' points as ripeness arguments.

taking. *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 194–95 (1985). Though *Williamson* considered ripeness in the context of a regulatory taking, the Third Circuit has applied the *Williamson* test to land disputes involving RLUIPA, Free Exercise, and Equal Protection claims. *See, e.g.*, *Congregation Anshei*, 338 F. App'x at 217–19 (Free Exercise Clause and RLUIPA claims); *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993) (Due Process and Equal Protection action under 42 U.S.C. § 1983).

Notably, the second prong of the *Williamson* test does not apply here because Plaintiffs have not asserted a takings claim. *See Congregation Kollel, Inc. v. Twp. of Howell, N.J.*, Civ. No. 16-2457, 2017 WL 637689, at *1 (D.N.J. Feb. 16, 2017) ("Because constitutional claims in these cited cases do not involve just compensation, the second prong of *Williamson* does not apply."); *Taylor Inv.*, 983 F.2d at 1291 (applying only the first prong of *Williamson's* ripeness test to as-applied substantive due process and equal protection claims); *Congregation Anshei*, 338 F. App'x at 217 (applying only *Williamson's* first prong to RLUIPA claims). Thus, the proper ripeness analysis here is under *Williamson's* first-prong finality requirement. The finality requirement "prevents a plaintiff from challenging a land use board's decision until it reaches a 'definitive position' regarding the property in question. This allows full development of the factual record and prevents courts from deciding a constitutional issue when administrative action could resolve the dispute." *Khal Anshei*, 2021 WL 5757404, at *7 (citing *Williamson Cty.*, 473 U.S. at 190–91). Accordingly, courts in the Third Circuit consider "(1) whether an immediate injury had been sustained; and (2) whether further development of the factual record would result in improvements in the administration of justice" to determine whether a land use board reached a final determination. *Congregation Kollel*, 2017 WL 637689, at *9 (citing *Congregation Anshei*, 338 F. App'x at 218–19); *Khal Anshei*, 2021 WL 5757404, at *7.

a)      *Facial Challenges*

Plaintiffs' RLUIPA and Free Exercise facial challenges are ripe because *Williamson's* finality rule does not apply to facial challenges. *See Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164. A final determination from a land use board is not necessary for facial challenges because "when a landowner makes a facial challenge, he or she argues that any application of the regulation is unconstitutional." *Id.* (quoting *Eide v. Sarasota Cnty.*, 908 F.2d 716, 724 n.14 (11th Cir. 1990)).

b)      *As-applied Challenges*

Defendants summarily contend that, without seeking a variance, Plaintiffs have "failed to establish a prima facie case that there is a substantial burden on the exercise of religion." (Opp'n Br. at 28–29.) Defendants repeatedly posit that Plaintiffs cannot claim that their rights have been violated without first seeking a variance. However, Defendants do not provide any support for their argument that a variance application is necessary before bringing the present claims. (*Id.* at 29.) Additionally, beyond encouraging Plaintiffs to exhaust the administrative remedies available to them, Defendants do not explain why the ZBA's denial of Plaintiffs' appeal does not constitute a final decision. The Court does not find Defendants' ripeness arguments persuasive.

Here, the Court finds that Plaintiffs' RLUIPA, Free Exercise, and Equal Protection claims are ripe because (1) Plaintiff has alleged an immediate injury and (2) additional factual findings by way of a variance application would not significantly develop the record. *Congregation Kollel*, 2017 WL 637689, at *9.

First, Plaintiffs have sufficiently alleged that they suffered an immediate injury. Plaintiffs generally explain that "[h]ad Defendants not treated religious land uses differently and worse than various nonreligious assembly and institutional land uses in violation of RLUIPA and the Constitution in the prior ordinance, Plaintiffs would have been permitted to build their *shul* on

their Property at that time." (Moving Br. at 4.)  More specifically, the FAC alleges that they have "suffered significant damages as a result of the Township's laws and actions, including being required to acquire additional property, rental costs for other property, increased construction costs, expenditure of various professional fees, and other injuries." (FAC ¶ 220.)

Second, while it may be true that Plaintiffs *could* seek a variance to obtain a permit, not seeking a variance does not preclude Plaintiffs' claims.  The Third Circuit has indicated as such: "it does not necessarily follow that a decision by a board on appeal is a final determination ripe for federal review.  Nor can we say that a variance application is always necessary to satisfy the finality requirement.  The cases are fact-specific." *Congregation Anshei*, 338 F. App'x at 217 n.4.  Courts have found that a plaintiff's challenge to a land use ordinance is ripe without a plaintiff seeking a variance.  *See e.g.*, *Congregation Kollel*, 2017 WL 637689, at *10;  *Khal Anshei*, 2021 WL 5757404, at *7.  *But see Congregation Anshei*, 338 F. App'x at 218–19 (finding that a variance application would provide key factual development for the record to determine whether the plaintiff's use was permitted).  In both *Congregation Kollel* and *Khal Anshei*, the court found that the factual record did not need further development because the land use board "made a final determination that Plaintiffs' proposed use was *not* a permitted use." *Congregation Kollel*, 2017 WL 637689, at *10;  *Khal Anshei*, 2021 WL 5757404, at *7 ("Because the Board already found the proposed use was prohibited in the proposed zone, this is not a case where a variance application would have clarified the record.").

Similarly, here, Plaintiffs have alleged that they appealed the denial to the ZBA, a meeting was held regarding the appeal, and the ZBA ultimately upheld the denial because "a house of worship is not a permitted use in the RR Zone." (FAC ¶¶ 88–90.)  Given that the ZBA already determined that Plaintiffs' proposed use was not permitted, the Court finds that "no further

development of the factual record is necessary." *Congregation Kollel*, 2017 WL 637689, at \*10.

Accordingly, the Court finds that Plaintiffs' as-applied claims seeking damages are ripe for review.

**B.    PLAINTIFFS' RLUIPA CLAIMS**

Though Plaintiffs allege four violations of RLUIPA, the Motion only seeks relief for violations of the Equal Terms Provision and the Exclusion and Limits Provisions, Counts III and IV respectively. (FAC ¶¶ 232–35.)

Defendants do not substantively oppose Plaintiffs' Equal Terms and Exclusion and Limits RLUIPA claims.   Instead, Defendants largely rely on RLUIPA's governmental-discretion provision, also known as the safe harbor provision. (Opp'n Br. at 13.) Defendants contend that under the safe harbor provision, "a local government can avoid liability under RLUIPA by amending its land use regulations to remove the allegedly burdensome or discriminatory provisions, *even after such provisions have caused harm*."[8]  (*Id.*) (emphasis in original.)  Thus, Defendants contend that the Motion must be denied because the "subject ordinances fall within" the safe harbor provision because they have been amended. (*Id.* at 15–16.) Plaintiffs counter with two key points as to why the safe harbor is not applicable here.  First, Plaintiffs argue that the safe harbor provision only applies to the Substantial Burdens Provision of RLUIPA, and not the Equal Terms or Exclusion and Limits Provision. (Reply at 1–2.)  Second, Plaintiffs argue that even if the safe harbor applies, the provision "only protects governments against the 'preemptive force' of RLUIPA," *i.e.*, its injunctive power, and not to "a claim for damages for *past* injuries." (*Id.* at 3–5.)

---

[8] Here, Defendants first rely on the Seventh Circuit's decision in *Civil Liberties for Urban Believers v. City of Chicago* for the proposition that the safe harbor provision extends to Equal Terms claims. 342 F.3d 752, 762 (7th Cir. 2003). Notably, in *Civil Liberties*, the court considered the applicability of the safe harbor provision to the Nondiscrimination Provision of RLUIPA, not the Equal Terms or Exclusion and Limits Provisions at issue in the present action. 342 F.3d at 759–60.

RLUIPA's safe harbor provision states that:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

42 U.S.C. § 2000cc-3(e).   Importantly, neither the Third Circuit nor the Supreme Court has addressed whether RLUIPA's safe harbor provision "bars any cause of action under the statute once the offending policy has been revised." *Pratt v. Ott*, Civ. No. 20-171, 2021 WL 1212587, *3 (M.D. Pa. Mar. 31, 2021).   Though Defendants rely on authority outside the Third Circuit to support their arguments, the Middle District of Pennsylvania considered whether the safe harbor provision applies to damages in *Pratt v. Ott*.[9] 2021 WL 1212587, at *3–6.

The court in *Pratt* acknowledged that various courts have approached this issue differently, but no court had yet applied "traditional tools of statutory interpretation" to the safe harbor provision; the court then conducted the statutory analysis. *Id.* at *4.   Specifically, the court focused its analysis on the safe harbor provision's phrase "preemptive force." *Id.* at *5–6.   The court reviewed the plain meaning of the statutory text and defined the term "preemption" and "preemptive force" and concluded that "Defendants' suggestion that the provision extinguishes liability for monetary damages incurred *before* they took corrective action finds no support in the statute's plain text." *Id.* at *5 (emphasis in original).   The court also considered the jurisprudential usage of the phrase "preemptive force" as well as the legislative history of RLUIPA. *Id.* at *6.

Ultimately, the court found that "[n]othing in the plain language of RLUIPA, its legislative history, or judicial treatment of the term 'preemptive force' suggests an intent to foreclose all

---

[9] Defendants only mention *Pratt v. Ott* in passing once and do not otherwise explain why this Court should not be persuaded by its holding that the safe harbor provision does not extend to damages.  (Opp'n Br. at 14–15.)

liability or damages" and the court rejected the argument that the safe harbor provision "eliminates all legal remedies under the statute in this case." *Id.* Accordingly, though the plaintiffs could not pursue injunctive relief, the *Pratt* court permitted the plaintiffs to pursue monetary damages and attorney's fees under RLUIPA. *Id.*

Here, the Court is persuaded by the thorough and well-reasoned analysis of the safe harbor provision in *Pratt* and it similarly concludes that the safe harbor provision does not extend to claims for damages.[10] *See also Family Life Church v. City of Elgin*, Civ. No. 07 CV 217, 2007 WL 2790763, at \*5 (N.D. Ill. Sept. 24, 2007) ("[W]e do not read the RLUIPA or *Civil Liberties* to stand for the proposition that the corrective action can retroactively erase injuries already incurred as well as the corresponding ability to sue for damages."). *But see Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge, N.Y.*, Civ. No. 19-443, 2021 WL 1226930, at \*16 (S.D.N.Y. Mar. 31, 2021) (finding that the safe harbor provision extends to requests for damages). Accordingly, the Court will consider whether Plaintiffs have sufficiently alleged violations of the Equal Terms and Exclusion and Limits Provisions of RLUIPA.

      1.    <u>Equal Terms</u>

Count III of the FAC asserts a violation of the Equal Terms Provision of RLUIPA. (FAC ¶¶ 232–33.)

The Equal Terms Provision specifically provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The Third Circuit has "construed the RLUIPA Equal Terms section to include neither a substantial burden nor a strict scrutiny requirement." *Lighthouse Inst.*, 253 F.3d at 270. Rather, to

---

[10] Because the Court finds that the safe harbor provision does not eliminate a claim for damages, the Court need not determine whether the safe harbor provision also applies to the Equal Terms and Exclusion and Limits Provisions.

demonstrate that a plaintiff "was treated less well than a nonreligious comparator that had an equivalent negative impact on the aims of the land-use regulation," a plaintiff must show: "(1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance." *Id.*

Here, Defendants' main arguments disputing the Equal Terms claim are the same mootness and ripeness arguments that they assert against all of Plaintiffs' claims. (Opp'n Br. at 21–22.) For the reasons indicated above, the mootness and ripeness arguments fail.

The only other argument Defendants raise is that Plaintiffs do not sufficiently allege that "obtaining a development permit for the subject property would be any different than for any other person or entity within the Township." (Opp'n Br. at 21.)  However, critical to Plaintiffs' claim is that at the time they submitted the Application, "churches and places of worship were not allowed as either a permitted or conditional use in the RR [Z]one." (FAC ¶ 62; Moving Br. at 26–27.)  The parties do not dispute that the permitted conditional uses in the RR Zone included "many other nonreligious assembly and land uses," including public utilities, nursery schools, health care facilities, quasi-public and private club recreation areas, farmers' markets, administrative offices, research laboratories, and continuing-care retirement communities. (FAC ¶ 63.)  The fact that a *shul* was neither a permitted *nor* conditional use supports Plaintiffs' position that it was treated on less than equal terms than the permitted secular uses. *See Al Falah Ctr. v. Twp. of Bridgewater*, Civ. No. 11-2397, 2013 WL 12322637, at *15 (D.N.J. Sept. 30, 2013) (denying defendant's motion for summary judgment because the court could not "rule as a matter of law that the Ordinance treats religious assemblies on equal terms with non-religious assemblies" where places of worship were conditional, and not permitted, uses).  Plaintiffs also allege—and Defendants admit—that the

Land Use Regulations require greater lot size requirements and larger lot width requirements for places of worship. (FAC ¶¶ 62, 66–68; Answer ¶¶ 62, 66–68.) Notably, the Land Use Regulations also "required a minimum lot area of 10 acres for places of worship generally while requiring a significantly smaller minimum lot area (or none at all) for nonreligious assembly and institutional uses." (FAC ¶¶ 67–68; Answer ¶¶ 67–68; Moving Br. at 27.)

Defendants' Answer does not specifically deny these allegations; instead, Defendants broadly state that "[t]o the extent that Plaintiffs' reference a prior zoning ordinance, the Ordinance speaks for itself.  Further, the Ordinance referred to by Plaintiffs has been amended and was replaced by Ordinance 4700-21."  (Answer ¶¶ 62–63.)  Though it is not explicit, Defendants' responses to these allegations functionally operate as an admission because the answers merely defer to the language of the Land Use Regulations.  Defendants do not dispute the contents of the Land Use Regulations.  Nor is there any explanation as to why the Ordinances excluded places of worship as either permitted or conditional uses, "why a [*shul*] would cause greater harm to regulatory objective than" any other permitted use.  *See Lighthouse Inst.*, 510 F.3d at 272–73 (remanding the Equal Terms claim to the district court to enter summary judgment in favor of plaintiff where the aims of an ordinance were "not well documented" to exclude churches as permitted uses); *see also* Moving Br. at 29–31.  In fact, Plaintiffs contend that "the only discernable 'pattern' that has manifested from the Defendants' discriminatory zoning laws and illegal actions is the discriminatory treatment of churches and places of worship." (Moving Br. at 29.)  Taking all of Plaintiffs' allegations together, the Court finds that Plaintiffs are entitled to judgment on their Equal Terms RLUIPA claim (Count III).

### 2. Exclusions and Limits

Count IV of the FAC asserts a violation of the Exclusion and Limits Provision of RLUIPA. (FAC ¶¶ 234–35.)

The Exclusion and Limits Provision provides that no government shall impose or implement a land use regulation that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction. 42 U.S.C. § 2000cc(b)(3). Like with the Equal Terms Provision, the Exclusions and Limits Provision also does not include a strict scrutiny requirement. *Lighthouse Inst.*, 510 F.3d at 269. The purpose of the Exclusions and Limits Provision "is not to examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate." *Al Falah*, 2013 WL 12322637, at *14 (quoting *Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. V. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 387 (E.D. Pa. 2010). To determine what is reasonable, courts consider "all of the facts, including the actual availability of land and the economics of religious organizations." *Id.* (quoting *Vision Church v. Village of Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006)).

Here, Plaintiffs argue that Defendants violated the Exclusions and Limits Provision because the Land Use Regulations "unreasonably limited where churches and places of worship could locate within [the Township]." (Moving Br. at 37.) To support their position, Plaintiffs explain that the Land Use Regulations: (1) prohibit "churches and places of worship in the RR [Zone] and other residential zones", (FAC ¶¶ 62–63, 66; Answer ¶¶ 62–63, 66); and (2) limit where churches could locate within Toms River by requiring greater lot areas and greater minimum lot width requirements for churches, (FAC ¶¶ 67–68, 75–76; Answer ¶¶ 67–68, 75–76).

Though Defendants deny that the Consent Order itself is an admission that the Land Use Regulations violated RLUIPA or any of Plaintiffs' rights, the Township nevertheless stipulated to facts that support the conclusion that it unreasonably limited where Plaintiffs could build their *shul*.[11] (Opp'n Br. at 9–10.) In this regard, the Township stipulated that: (1) the Land Use

---

[11] The Court refers to the stipulated facts in the Consent Order as part of the factual record of the pleadings. The Court does not construe the Consent Order as an admission that the Regulations violated any law.

Regulations reduced the number of parcels eligible for places of worship by limiting zoning districts and increasing minimum lot size requirements; (2) places of worship were no longer permitted as a conditional use in residential zones located in "the northern area of the Township where population growth, including the growth of the Orthodox Jewish population, and thus potential demand for new houses of worship, is most likely"; and (3) "[t]he only zoning district classifications—covering a total of 5 out of 57 zoning districts—where houses of worship are allowed as of right in the Township all are located in the largely developed downtown area—miles away from where residents, including Orthodox Jewish residents, are moving." (Consent Order ¶¶ 13–14.) The Township further stipulated that the effect of the Land Use Regulations, as they existed at the time Plaintiffs filed the Application, "has been to reduce significantly both the number of zoning districts in which houses of worship may locate and the number of sites available for houses of worship within the remaining districts where they may lawfully locate." (*Id.* ¶ 15.)

All of these facts, Plaintiffs argue, are unreasonable limitations that "broadly limited where religious entities can locate" within the Township. (Moving Br. at 40 (citing *Adhi Parasakthi*, 721 F. Supp. 2d at 387)). As Plaintiffs point out, Defendants neither deny these factual allegations nor oppose any of Plaintiffs' arguments relating to the Exclusions and Limits claim.[12] (*See generally* Opp'n Br; Reply Br. at 9.) In this light, the Court finds that Plaintiffs have established that no material facts remain to be resolved with respect to the Exclusions and Limits claim. The undisputed facts here support that the Land Use Regulations unreasonably limited where Plaintiffs could build their *shul*. The Land Use Regulations prohibited places of worship in the RR Zone

---

[12] Defendants only reference Plaintiffs' Exclusion and Limits claim once in passing. Defendants broadly state that requiring Plaintiffs to seek a variance "does not substantially burden the exercise of religion, provide an unreasonable limit, or treat Plaintiff[s] differently." (Opp'n Br. at 28.) To the extent Defendants rely on the mootness and ripeness arguments that Defendants assert against all of Plaintiffs' claims, for the reasons indicated above, those arguments fail.

and increased the requirements for places of worship in the zones where they were permitted as conditional uses. The overall effect of the Land Use Regulations was to constrict the development of places of worship in the Township.  Accordingly, the Court finds that Plaintiffs are entitled to judgment on the pleadings on their Exclusions and Limits RLUIPA claim (Count IV).

### C.   PLAINTIFFS' CONSTITUTIONAL CLAIMS

#### 1.   Free Exercise

Count VI of the FAC asserts a violation of the Free Exercise Clause.  (FAC ¶¶ 238–39.) The Free Exercise Clause, made applicable to local government by the Fourteenth Amendment, provides that no law may prohibit the free exercise of religion. *Lighthouse Inst.*, 510 F.3d 253 at 273.  "Depending on the nature of the challenged law or government action, a free exercise claim can prompt either strict scrutiny or rational basis review." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002).  "If a law is 'neutral' and 'generally applicable,' and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection." *Id.* (citation omitted).  "A law is 'neutral' if it does not target religiously motivated conduct either on its face or as applied in practice." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) (citing *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah,* 508 U.S. 520, 533–40 (1993); *Tenafly*, 309 F.3d at 167). "A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." *Id.* (citing *Lukumi*, 508 U.S. at 543–46; *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 364–66 (3d Cir. 1999)).  Conversely, if the law is not neutral or generally applicable, then "strict scrutiny applies and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly

19

tailored to advance a compelling government interest." *Tenafly*, 309 F.3d at 166 (citing *Lukumi*,

508 U.S. at 532, 542).

Plaintiffs argue that the Land Use Regulations are subject to strict scrutiny because the

Land Use Regulations "treated comparable secular activity more favorably than religious activity,

making it facially discriminatory and non-neutral toward religion." (Moving Br. at 17.) Plaintiffs

position is that the Land Use Regulations "were not neutral toward religion because they 'single

out houses of worship for especially harsh treatment.'" (*Id.* at 20 (citing *Roman Cath. Diocese of*

*Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020).)   However, Defendants do not oppose any of

Plaintiffs' arguments relating to their Free Exercise claim. (*See generally* Opp'n Br.) Defendants

only summarily contend that Plaintiffs fail "to establish a prima facie case that there is a substantial

burden on the exercise of religion" because they have not sought a variance.[13]   (*Id.* at 28–29.)

Accordingly, at this stage of the matter, the Court will review Defendants' Answer to determine

"whether on the undenied facts alleged in the complaint and assuming as true all the material

allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law."

*Blumenthal*, 315 F.2d at 352.

The Court begins by assessing whether the Land Use Regulations were discriminatory,

either on their face or as applied.  Having reviewed the relevant Land Use Regulations, the Court

finds that the Land Use Regulations do treat religious uses differently from secular uses for the

following reasons.  First, the Land Use Regulations specifically excluded places of worship within

the RR Zone.  Plaintiffs allege, and Defendants do not deny, that the Land Use Regulations did

---

[13] Like the RLUIPA claims, a Free Exercise claim does not have a "substantial burden" requirement.  Rather, "when a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain in what way the inability to locate in the specific area affects its religious exercise." *Lighthouse Inst.*, 510 F.3d at 274.  Here, the Court finds that Plaintiffs have alleged why this location is uniquely suited and why its inability to locate within the RR Zone would affect their ability to free exercise their religion. (See FAC ¶¶ 14–51.) Though Defendants neither admit nor deny these allegations, the Court accepts Plaintiffs' allegations as true considering the facts relate specifically to Plaintiffs individual religious exercise. (Answer ¶¶ 14–51.)

not allow a place of worship as either a permitted or conditional use in the RR Zone at the time Plaintiffs submitted the Application.  (FAC ¶¶ 62, 65; Answer ¶¶ 62, 65.)  The parties do not dispute that the Land Use Regulations permitted at least nine other conditional uses for nonreligious assemblies and institutional land uses within the RR Zone.  (FAC ¶ 63; Answer ¶ 63.)  Further, the parties do not dispute that Plaintiffs' Application was denied because the intended land use was not permitted in the RR Zone; Defendants deny Plaintiffs' allegation to the extent that it pleads that the denial was on the *sole* basis that the use was not permitted in the RR Zone.  (FAC ¶ 88; Answer ¶ 88.)

Second, the Land Use Regulations subjected places of worship to "much more onerous requirements than nonreligious uses in the zone in which they were permitted."  (Moving Br. at 19.)  Here, the parties do not dispute the specific minimum lot area, minimum lot width, and maximum impervious coverage requirements for places of worship in permitted conditional uses and nonreligious assembly and institutional land uses.  (FAC ¶¶ 59, 68, 76, 78; Answer ¶¶ 59, 68, 76, 78.)  First, places of worship had a minimum lot area requirement of ten acres.  (FAC ¶ 67; Answer ¶ 67.)  The lot area requirements for nonreligious uses ranged from no minimum lot size to five acres.  (FAC ¶ 68; Answer ¶ 68.)  Plaintiffs allege that the ten-acre requirement "was impracticable" given the cost of a 10-acre property and that they "did not need ten acres to build their small *shul*."  (FAC ¶ 70–71).  Second, places of worship had a minimum lot width of 300 feet.  (*Id.* ¶ 75; Answer ¶ 75.)  Only one of the fifteen listed nonreligious uses had a minimum lot width requirement: a 90-foot interior lot was required for a home professional office.  (FAC ¶ 76; Answer ¶ 76.)  Finally, places of worship had a maximum impervious coverage requirement of 40%.  (FAC ¶ 77; Answer ¶ 77.)  The maximum impervious coverage requirement for nonreligious uses ranged from 50% to no maximum specified.  (FAC ¶ 78; Answer ¶ 78.)  Even viewing the

facts in the pleadings in a light most favorable to Defendants, the Court finds that the Land Use Regulations treated religious and nonreligious uses differently.  It is clear that the Land Use Regulations prohibited places of worship in the RR Zone while permitting various other nonreligious uses in the same zone. Though conditional use approval may be required for *both* religious and nonreligious uses, here, the Land Use Regulations limited and restricted places of worship by placing more demanding requirements on those uses than the less demanding restrictions on the nonreligious uses.

For all the above reasons, the undisputed record supports the Court's finding that the Land Use Regulations are not facially neutral or generally applicable.  Even if the Land Use Regulations were facially neutral, "courts may consider direct and circumstantial evidence in determining whether an ordinance was passed with a discriminatory purpose." *WR Property LLC v. Twp. of Jackson*, Civ. No. 17-3226, 2021 WL 1790642, at *9 (D.N.J. May 5, 2021).  Plaintiffs' undisputed allegations in the FAC, coupled with the Township's stipulated facts in the Consent Order, reinforce a finding that the Land Use Regulations are not neutral or generally applicable.

Defendants deny Plaintiffs' allegation that "[s]ignificant hostility against Orthodox Jews exists on the part of the government and residents of [the Township]."  (FAC ¶ 98; Answer ¶ 98.) However, the undisputed record suggests otherwise.  Defendants do not deny allegations that indicate animus against the Orthodox Jewish community in the Township.  For example, Defendants do not deny that Township officials have been quoted making anti-Semitic comments, such as referring to the growing Orthodox Jewish community into Toms River as "an invasion." (FAC ¶ 108; Answer ¶ 108.)  Additionally, in 2015, Plaintiffs allege that the Township "conducted an analysis of vacant parcels in excess of seven acres in North Dover . . . and [identified] parcels that are zoned in districts that permit churches and houses of worship as a conditional use."  (FAC

¶ 103; Answer ¶ 103.)  Though Defendants neither admit nor deny that the analysis took place, Defendants do not deny that two years later, the Township council "passed Ordinance 4558-17, expanding the reach of the 10-acre requirement for houses of worship to the entire Township." (FAC ¶ 107; Answer ¶ 107.)  Nor do Defendants deny that Township residents have expressed anti-Semitic messages towards the Orthodox Jewish community.  For example, there were multiple instances of graffiti in a park with the words "Burn the Jews" and "Jews go back to Lakewood" carved into a playground and bench.  (FAC ¶¶ 114, 116; Answer FAC ¶¶ 114, 116.)  Defendants also do not deny that Township residents started a movement called "Toms River Strong" whose goal was to "prevent the Orthodox Jewish community from purchasing homes in [the Township]." (FAC ¶¶ 118–21; Answer ¶¶ 118–21.)

Further, the Township's stipulated facts in the Consent Order align with Plaintiffs' allegations.  For example, the Township stipulated to the fact that the Land Use Regulations "especially impact options for Orthodox Jewish residents to establish Orthodox Jewish houses of worship within walking distance from their homes, as required by their religious beliefs, and whose houses of worship are generally small and do not require significant acreage."  (Consent Order ¶ 17.)  Overall, the Township has stipulated to the fact that the "cumulative effect of [the Land Use Regulations] has been to reduce significantly both the number of zoning districts in which houses of worship may locate and the number of sites available for houses of worship within the remaining districts where they may lawfully locate."  (*Id.* ¶ 15.)  For these reasons, the Court finds that the undisputed allegations in the pleadings, the hostility expressed by Township residents and officials, together with the stipulated facts in the Consent Order, supports a finding that anti-Semitic animus was a motivating factor of the Land Use Regulations.  *See WR Prop.*, 2021 WL

1790642, at *10; *Al Falah*, 2013 WL 12322637, at *7.  Therefore, the Court finds that the Land Use Regulations are not neutral or generally applicable.

Given that the Land Use Regulations are not neutral or generally applicable, strict scrutiny applies. *Tenafly*, 309 F.3d at 166.  "To be permissible under the Free Exercise Clause, [the Land Use Regulations] 'must advance interests of the highest order and must be narrowly tailored in pursuit of those interests.'" *Id.* (quoting *Lukumi*, 508 U.S. at 546).  Beyond arguing that Plaintiffs failed to seek a variance or otherwise follow the steps to properly obtain a permit, Defendants are silent on Plaintiffs' Free Exercise claim.  Though Defendants deny that the Land Use Regulations discriminated against land uses, (Answer ¶ 79), nowhere in the pleadings do Defendants explain why the Land Use Regulations are not discriminatory, what compelling interests the Township was advancing with the Land Use Regulations, or how the Land Use Regulations were narrowly tailored to pursue those compelling  interests.  Viewing the facts of the pleadings in light most favorable to Defendants, given that Defendants neither offer any compelling government interest nor any explanation as to why the Land Use Regulations were narrowly tailored to serve those interests, the Court finds that the Land Use Regulations cannot satisfy strict scrutiny.  Based on the foregoing, the Court finds that Plaintiffs are entitled to judgment on the pleadings on their Free Exercise claim (Count VI).

　　　　2.　　Equal Protection

Finally, Count V of the FAC asserts a violation of the Equal Protection Clause.  (FAC ¶¶ 236–37.)  The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.  There are two steps in establishing an Equal Protection claim with respect to zoning ordinances.  First, the initial burden is on Plaintiffs to establish that they are "similarly situated to other uses that are either permitted as of right, or by special permit, in a zone." *Congregation Kol Ami v. Abington*

*Twp.*, 309 F.3d 120, 137 (3d Cir. 2002). "If, and only if, the entities are similarly situated, then the city must justify its different treatment of the two, perhaps by citing to the different impact that such entities may have on the asserted goal of the zoning plan." *Id.*

To support their Equal Protection claim, Plaintiffs allege that the Land Use Regulations allowed various nonreligious uses in the RR Zone, including "nursery schools and day nurseries, health care facilities, quasi-public and private club recreation areas, farmers' markets, auction markets, administrative offices and research laboratories, continuing-care retirement communities, and long-term residential health care facilities." (Moving Br. at 23–24; FAC ¶ 63.) Plaintiffs accordingly allege that its *shul*, a place of worship, is "similarly situated to the nonreligious assembly and institutional land uses listed above with respect to any regulatory purposes." (FAC ¶ 212.) Defendants, however, deny this allegation. (Answer ¶ 212.) Additionally, unlike the previous claims, Defendants substantively oppose Plaintiffs' Equal Protection claims. (Opp'n Br. at 22–24.) Importantly, Defendants argue that Plaintiffs' assertion that the nonreligious uses "propose the same combination of uses [as a place of worship] is dubious." (Opp'n Br. at 23–24.)

Here, viewing the facts alleged in the pleadings in the light most favorable to Defendants, the Court does not find that Plaintiffs have satisfied their burden in establishing that a place of worship is similarly situated to the other nonreligious uses permitted by the Land Use Regulations.[14] Plaintiffs generally refer to other nonreligious uses throughout the FAC, but the pleadings do not plausibly allege with supporting facts how a place of worship is similarly situated to the nonreligious uses. Unlike with Plaintiffs' previous claims, here, there appears to remain an

---

[14] The Court also notes that in its Reply, Plaintiffs appear to place the burden on Defendants to establish why places of worship are similarly situated to other nonreligious uses: "Defendants provide no explanation at all as to why houses of worship should be treated differently than nonreligious assembly and institutional uses." (Opp'n Br. at 12.) However, the Third Circuit has clarified that the burden is on the plaintiff. *Kol Ami*, 309 F.3d at 137.

issue of fact based on Defendants' denial of Plaintiffs' allegation. The Court therefore finds that it cannot grant judgment in favor of Plaintiffs on their as-applied Equal Protection claim.

## IV.   **CONCLUSION**

For the reasons stated above, the Court will GRANT-IN-PART and DENY-IN-PART Plaintiffs' Motion for Partial Judgment on the Pleadings. The Court will GRANT Plaintiffs' Motion as to Count III (Equal Terms Provision), Count IV (Exclusion and Limits Provision), and Count VI (Free Exercise claim); the Court will DENY Plaintiffs' Motion as to Count V (Equal Protection). An appropriate Order will follow.

Date: **February 29, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE