## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KHAL ANSHEI TALLYMAWR INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-2716 (RK) (JTQ) |
| **BAIS BRUCHA INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-3239 (ZNQ) (JTQ)<br><br>**MEMORANDUM OPINION**<br>**<u>AND ORDER</u>** |

Over four years into litigation, Defendants have failed to produce complete discovery responses. If the Court were writing on a blank slate to address this shortcoming now that would be one thing. But Defendants' failure here flies in the face of multiple Court Orders and multiple extensions, all of which provided clear deadlines for the completion of Defendants' production. Each deadline was missed. And it is the Court's understanding that to date Defendants' production remains incomplete. This is inexcusable and, under the circumstances, sanctionable.

The question thus becomes: What is the appropriate sanction? Plaintiffs spend most of their briefing arguing for the entry of default judgment. But the Court is not convinced that this *severe* sanction is warranted here, as it would require the Court to ignore the discovery responses that Defendants *have* produced thus far and accept Plaintiff's speculative argument that Defendants' inability to complete their production is either willful or done in bad faith—something this Court will not do. Nor is the Court convinced that the circumstances here warrant Plaintiffs' alternative requests for either an adverse inference or the exclusion of evidence. The Court instead will hold Defendants in contempt for their violation of multiple Court Orders and will award limited attorneys' fees. Consequently, Plaintiffs' Motions[1] are **DENIED** in part and **GRANTED** in part.

## I.    BACKGROUND[2]

On February 16, 2021, Plaintiff Khal Anshei Tallymawr Inc. filed a complaint against defendants Township of Toms River, New Jersey, and Township of Toms River Zoning Board of Adjustment (collectively, "Defendants"), Case No. 3:21-cv-02716-RK-JTQ (the "*Tallymawr* action") and one week later, Plaintiffs Bais Brucha Inc. and Rabbi Mordechai Sekula filed a similar complaint against Defendants, Case

---

[1] Due to their significant overlap, the Court addresses the motions for sanctions filed in Civil Action Nos. 21-2716 and 21-3239 together in this Opinion.

[2] The Court has set forth the background of these matters at length in its previous decision (ECF No. 157) and therefore limits its discussion herein to the facts salient to the motions.

No. 3:21-cv-03239-ZNQ-JTQ (the "*Bais Brucha* action").[3] The discovery disputes at issue have been ongoing in both matters for years. Pursuant to the first scheduling Orders, the Parties were to complete fact discovery by November 1, 2022, in the *Tallymawr* action and by May 1, 2023 in the *Bais Brucha* action. ECF No. 22 in 21-2716; ECF No. 56 in 21-3932. After numerous discovery extensions (requested by both Plaintiffs and Defendants) (ECF Nos. 47, 57, 66, 86, 106, 124, 130, 138, 141, 147, 168, 171 in ECF No. 21-2716; ECF Nos. 68, 74, 80, 92, 118, 132, 136, 146, 155, 160, 178, 181 in 21-3239), court conferences, and deposition disputes (ECF Nos. 74 & 77 in 21-2716; ECF Nos. 81 & 84 in 21-3239), the Parties have been unable to move beyond fact discovery.

On October 10, 2023, Plaintiffs filed a (225 page-long) motion to compel discovery in the *Tallymawr* and *Bais Brucha* actions, arguing that: (1) Defendants failed to adequately respond to Plaintiffs' discovery requests by providing what Plaintiffs deemed "baseless" objections and "irrelevant or nonsensical" responses (ECF No. 97-18 at 7-12[4] in 21-2716; ECF No. 109-17 at 7-12 in 21-3239); and (2) Defendants did not comply with the Court's July 31, 2023 Scheduling Order by failing to produce a privilege log, providing an "incomplete" certification from KLDiscovery, their third party discovery provider, producing incomplete insurance policies, and neglecting to "substantially complete" their document production (ECF No. 97-18 at 13-17 in 21-2716; ECF No. 109-17 at 13-17 in 21-3239). In opposition, Defendants

---

[3] For ease of reference, the plaintiffs in both actions will be referred to collectively herein as "Plaintiffs."

[4] The pages cited herein are those provided by PACER.

argued that they had adequately responded to Plaintiffs' discovery demands and continued to produce responsive documents. ECF No. 102 in 21-2716; ECF No. 115 in 21-3239. On May 20, 2024, the Court granted Plaintiffs' motion to compel. ECF No. 134 in 21-2716; ECF No. 142 in 21-3239.

On June 4, 2024, the Parties submitted a joint status report wherein Plaintiffs claimed that Defendants failed to comply with the May 20 Order. ECF No. 139 in 21-2716; ECF No. 147 in 21-3239. For this reason, Plaintiffs requested leave to file a motion for sanctions. *Id*. In Defendants' portion of this report, they reiterated their willingness to respond to Plaintiffs' discovery requests, noting the volume of privileged information that had to be culled through. *Id*. The Court initially denied Plaintiffs' request to file a motion for sanctions and instead set new deadlines for Defendants' production of responsive documents and a compliant privilege log. ECF No. 141 in 21-2716; ECF No. 149 in 21-3239. Thereafter, the Court granted additional requests by Plaintiffs and Defendants to extend discovery deadlines, first extending Defendants' production deadline by 45 days and then similarly enlarging the discovery end date. ECF Nos. 147 & 150 in 21-2716; ECF Nos. 155 & 160 in 21-3239.

Plaintiffs later renewed their request for leave to move for sanctions (ECF Nos. 164 & 165 in 21-2716; ECF Nos. 174 & 175 in 21-3239) and Defendants responded detailing their prior ESI productions and the remaining number of documents to be reviewed (ECF No. 166 in 21-2716; ECF No. 176 in 21-3239). With a continuing lack of forward movement in the cases, the Court granted Plaintiffs leave to file a motion for sanctions on November 27, 2024 (ECF No. 168 in 21-2716; ECF No. 178 in 21-

3239) and the instant application followed.

Now, Plaintiffs take issue with Defendants' alleged failure to: (1) amend interrogatory responses; (2) amend responses to document requests; (3) complete their document production; (4) serve a compliant privilege log; and (5) provide a new certification of their ESI vendor. Plaintiffs ask the Court to enter default judgment against Defendants under Rule 37(b)(2)(C) or, alternatively, grant adverse inferences against Defendants, exclude evidence, find Defendants in contempt of court, and award Plaintiffs attorneys' fees and costs. *See* ECF No. 172-1, Moving Brief ("Mov. Br.")[5] at 23-47. Defendants contend that to impose any sanction would be improper because while their discovery responses remain incomplete, they continue to act in good faith. *See* ECF No. 173, Defs.' Opposition Brief ("Opp. Br.") at 11-33.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes the Court to impose sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).  Such sanctions may include

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;

---

[5] Plaintiffs submit briefs that make the same arguments in both the *Tallymawr* and *Bais Brucha* actions. For ease of reference, citations to the Parties' briefing will refer to the page numbers provided by PACER in the *Tallymawr* action, Case No. 21-2716.

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Whether to impose sanctions and the choice of appropriate sanctions is committed to the sound discretion of the Court. *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217 (3d Cir. 2003). This discretion "is not . . . carte blanche"; instead, a "court[']s discretion [is limited] in two ways: First, any sanction must be 'just'; second, the sanction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995) (emphasis in original) (internal quotation marks omitted)).

These limitations are "rooted in notions of due process," the first representing "the general due process restrictions on the court's discretion" and the second requiring "that a 'specific nexus' exist between the sanction imposed and the underlying discovery violations." *Id.* (citing *Harris*, 47 F.3d at 1330-31). Said another way, "it requires that the unproduced discovery be sufficiently 'material to the administration of due process' to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit." *Id.*

## III.    ANALYSIS

Before turning to the merits of the Parties' substantive arguments, the Court addresses some procedural issues in the briefing. This is not the first time the undersigned has written on procedural violations in this litigation. And while the Court should not be required to spill so much ink on such issues, procedure matters, particularly where, as here, it is not being followed and has caused disputes.

### A. Procedural Issues

As an initial matter, the Court is troubled by Plaintiffs' failure to provide proper exhibit citations. It is not the job of the Court to follow the breadcrumbs dropped by counsel to find the correct supporting documents for Plaintiffs' arguments, particularly given the number of exhibits attached to their briefing. *C.f. Doebler Pa. Hybrids, Inc. v. Doebbler,* 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record"); *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) ("a court is not obliged to scour the record to find evidence that will support a party's claims"). And yet, rather than refer the Court directly to exhibits, Plaintiffs require the Court to scour the record to locate the appropriate materials.[6] Perhaps most problematic is the fact that Plaintiffs are

---

[6] Plaintiffs' citations refer the Court to: (1) statements in Plaintiffs' counsel's declaration that lack legal or factual support (*see, e.g.*, Mov. Br. at 10-11, 14, 18, 37); (2) Plaintiffs' previous filings according to their ECF numbers (*see, e.g.*, Mov. Br. at 14, 16); and (3) charts Plaintiffs created summarizing Defendants' discovery responses, rather than the responses themselves (Mov. Br. at 15, 19). Additionally, on more than one occasion, Plaintiffs cite exhibits that do not stand for the propositions asserted (s*ee, e.g.*, Mov. Br. at 17 (citing BD ¶ 96, Exh. CC at 13)); Mov. Br. at 30 (citing ECF No. 95)).

7

seeking sanctions based on Defendants' allegedly insufficient discovery responses but fail to attach each response they take issue with, instead referring the Court to the previously filed motions to compel. ECF No. 172-3 ¶¶ 6-9. Plaintiffs' approach has made the Court's review of their arguments unnecessarily difficult.

The Court further notes that Plaintiffs continued to ignore procedure by submitting a 16-page reply brief containing 99 pages of exhibits without seeking prior leave of court. This plainly is improper, since Local Civil Rule 7.1 specifically states that "[n]o reply papers shall be filed, unless permitted by the Court." L. Civ. R. 7.1(d)(3); *see also* L. Civ. R. 37.1(b)(3) ("L. Civ. R. 7.1 shall apply to discovery motions, except that no reply papers shall be allowed except with the permission of the Magistrate Judge"). The brief's length also violates Local Civil Rule 7.2, which limits replies in 14-point proportional font to 15 pages in length.

And this is not the first time that Plaintiffs have inundated the Court with impermissible, lengthy filings. Specifically, on July 12, 2024, the Court cancelled oral argument and issued an Order expressing its frustration that "on the eve of oral argument on a motion that was filed months ago, Plaintiffs file hundreds of pages of 'supplemental information' that Plaintiffs write 'has been received from Defendants in the last few months.'" ECF No. 153 in 21-2716; ECF No. 162 in 21-3239. The Court could strike Plaintiffs' impermissible reply brief in its entirety but considers it despite Plaintiffs' disregard for the Rules. *See Crosby v. Goines*, 2018 WL 3062906, at *1 (D.N.J. June 21, 2018) ("it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to

*strictly comply* with the terms of a local rule"). Having addressed the procedural issues, the Court now turns to the Parties' substantive arguments.

### B. Plaintiffs are Not Entitled to Default Judgment, an Adverse Inference, or the Exclusion of Evidence.

Importantly, the dispute before the Court is not whether all discovery has been produced, because Defendants acknowledge that it has not. *See, e.g.*, ECF Nos. 129 & 139 in 21-2716; ECF Nos. 135 & 147 in 21-3239. Rather, Plaintiffs argue that sanctions should be imposed based on Defendants' "outright refusal to provide complete responses." (Mov. Br. at 21-22). For the reasons set forth below, the Court finds that Plaintiffs have demonstrated the appropriateness of holding Defendants in contempt of court for violating multiple Court Orders and will award limited attorneys' fees for having to file these motions. The Court rejects Plaintiffs' alternative forms of relief because Plaintiffs have not shown that the threshold requirement that a sanction be "just" has been met.

### i. Entry of Default Judgment is Inappropriate.

Plaintiffs spend most of their brief arguing for the entry of default judgment. This argument fails.

When a court is "asked to sanction a party by depriving that party of the right to proceed with or defend against a claim, the court applies the analysis established in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984)." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 101 (D.N.J. 2006); *see also Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990) (same). The *Poulis* factors are:

(1) [t]he extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868. No single factor is dispositive. *Briscoe,* 538 F.3d at 263. Notably, the Supreme Court and this Circuit have acknowledged that "dismissals with prejudice or defaults are drastic sanctions that must be a sanction of last, not first, resort." *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019) (internal quotation marks omitted).

The *Poulis* factors weigh against imposing this drastic remedy. As to the first factor, while it is true that Defendants themselves are responsible for the failure to provide *timely* discovery responses, the Court is not persuaded by Plaintiffs' unsupported assertion (and only argument on this factor) that "[t]he discovery sought was within the custody and control of the Township and Zoning Board." Mov. Br. at 24. Indeed, Plaintiffs' argument is predicated entirely on the notion that because the Township's Attorney Anthony Merlino previously appeared in this case, he "*presumably* worked closely with counsel in responding to discovery requests." Mov. Br. at 24 (emphasis added). The argument does not present even superficial appeal.

In any event, whether true or not, Plaintiffs' argument does not demonstrate that certain documents are in Defendants' possession or control, or that they were when Plaintiffs first served discovery requests. In fact, Defendants specifically state that "not all of the discovery sought is under the custody and control of Defendants,"

particularly because some of the elected officials identified in the discovery demands are no longer in office. Opp. Br. at 13; *see also* ECF No. 173-1 ¶ 36 (explaining that "many of the witnesses [Defendants produced for depositions] were no longer elected officials within the Township or employed by the Township"). For this reason, the Court finds that Defendants are limited in their ability to produce documents and provide information. The first factor thus weighs against entering default judgment.

Next, while Plaintiffs have plainly suffered prejudice from Defendants' discovery delays, a review of that prejudice is necessary when analyzing the second *Poulis* factor. Under this factor, the Court examines "the prejudice to other parties caused by the delay, including considering whether the party's conduct has resulted in extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party." *Huertas v. City of Phila.,* 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005) (quotation marks and citations omitted). Notably, the "prejudice is not limited to 'irremediable' or 'irreparable' harm." *Briscoe,* 538 F.3d at 258-59 (citation omitted). "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

Here, Defendants' failure to complete their document production by any of the Court's deadlines has caused delay and required Plaintiffs to file multiple motions.[7]

---

[7] Importantly, the Court is not swayed by Plaintiffs' complaints about having to send letters to opposing counsel, meet and confer, and attend court conferences as these are not examples of prejudice but rather are requirements set forth in Local Rule 26.1. *See* Mov. Br. at 25.

There is no question that Defendants' rolling production has taken more time than is permitted by the Rules or Court Order—and, to date, remains incomplete. Yet, Defendants have submitted exhibits and affidavits that show they produced a series of amendments to their answers to Plaintiffs' numerous interrogatories and Requests for Production (Opp. Br. at 15-16 (citing Patel Affidavit, Exs. P-U)), as well as several batches of thousands of documents in response to Plaintiffs' ESI demands (Opp. Br. at 16-17). Further, Defendants directly address Plaintiffs' claim that they are prejudiced without an "adequate" privilege log or updated certification from KL Discovery (Mov. Br. at 26), explaining that Defendants are waiting to conclude their ESI review to avoid producing piecemeal certifications and logs (Opp. Br. at 19).

As such, the facts here stand in stark contrast to the cases Plaintiffs rely on where Defendants have refused to engage in the exchange of discovery at all. Reply Br. at 11-12 (citing *Contra Aktas v. Mint Enter. LLC*, 2022 WL 11705208, at *2 (D.N.J. Oct. 20, 2022) (defendants failed to provide any discovery after multiple extensions and did not appear for three status conferences)). Nor is this a situation where Defendants' failure to produce has "[a]ffected the outcome of [ ] arbitration" or impeded Plaintiffs' ability to prepare for trial. Reply Br. at 12 (citing *Clarity Sports Int'l LLC v. Redland Sports*, 2024 WL 3743680, at *15 (M.D. Pa. Aug. 9, 2024); *Ware*, 322 F.3d at 222 (plaintiff's production, still incomplete, was produced one week before trial)). Indeed, a trial date has not even been set in this matter, nor is a trial likely to be set at any point soon given that fact discovery is on-going.

To be sure, Defendants' production remains incomplete, and the Court is at a loss to understand how that could be. Although Defendants have continued to make progress towards completing their production, ultimately, the prejudice to Plaintiffs has not been sufficiently "mitigated by Defendants' current and continued efforts to produce discovery." Opp. Br. at 14. Thus, the second factor weighs in Plaintiffs' favor.

Under the third factor, the Court examines whether the conduct in question evinces a pattern of dilatoriness. *Poulis*, 747 F.2d at 868. "Extensive or repeated delays or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories or consistent tardiness in complying with court orders." *Duda v. Rentokil N. Am., Inc.*, 2020 WL 1227526, at *3 (D.N.J. Mar. 12, 2020). "A failure to respond to court orders demonstrates a pattern of dilatory conduct." *Id.* This factor is easily satisfied. There have been multiple discovery extensions beginning as early as 2022, and although not all requests have been made by Defendants (*see* ECF Nos. 128 & 149), the majority have (*see, e.g.*, ECF Nos. 122, 135, 146).[8] Accordingly, the Court finds that Defendants have exhibited a pattern of dilatory conduct, and the third factor weighs in Plaintiffs' favor.

The fourth *Poulis* factor requires the Court to examine whether the conduct was either willful or in bad faith. The Court may find willfulness or bad faith when

---

[8] The Court nonetheless notes that the delay in this case cannot be solely attributed to Defendants. Rather, there has been a lack of cooperation by both Parties throughout this litigation. *See, e.g.*, ECF No. 153 (text order explaining that "[s]ince being assigned this matter barely one month ago, the undersigned has held multiple conferences and resolved a similar number of disputes, including one on short notice that should have been worked out by the Parties").

there is no reasonable excuse for the conduct. *Ware*, 322 F.3d at 224. However, such conduct is not that which is "merely negligent or inadvertent." *Yancey v. Wal-Mart Corp.*, 2022 WL 972489, at *10 (D.N.J. Jan. 31, 2022).

The record here does not support a finding of either willfulness or bad faith. Plaintiffs accuse Defendants of making misrepresentations to the Court, improperly withholding documents, and baselessly asserting privilege. Mov. Br. at 29-31. They claim Defendants have been "evasive" and "ignore[ed] Plaintiffs['] repeated requests for information." *Id.* at 29. While Plaintiffs have every right to be frustrated at the "speed" of Defendants' production and that it remains incomplete, Defendants have proffered a reasonable explanation for some of the delay and lack of alacrity.

Specifically, Defendants have explained that their counsel has had to undergo chemotherapy. Opp. Br. at 17. That serious fact notwithstanding, Defendants have made genuine efforts to provide Plaintiffs with complete discovery responses, while seeking to work cooperatively with Plaintiffs to achieve this goal. *Id.* at 18-19. For example, in 2024, Plaintiffs took at least 20 depositions of former Township council members and employees. At the conclusion of many of those depositions, Plaintiffs served document requests requiring Defendants to produce additional documents. *See, e.g.,* ECF No. 173-1 ¶¶ 26-28, 39-40. And the record reflects that Defendants made every effort to keep up with the influx of discovery demands. *See e.g.*, *id.* ¶¶ 49, 53, 60. Defendants also have remained transparent about the status of their electronic discovery search, offering to "collaborat[e] with Plaintiffs to determine which folders should be processed and searched." Opp. Br. at 18. This hardly is

evidence of bad faith or willful conduct.  To be clear, the Court does not (and will not) excuse Defendants' tardiness, but that tardiness bespeaks of negligence, which does not suffice as a matter of law. *See Yancey*, 2022 WL 972489, at *10.

Moreover, the Court finds disingenuous Plaintiffs' attempt to characterize certain mistakes as "*misrepresentations* to the Court." Mov. Br. at 29-30 (emphasis added).  Defendants simply acknowledge that they provided the incorrect number of email accounts uncovered during ESI review and reported the wrong number of search terms at issue. Defendants were forthright and the Court appreciates it when parties appropriately correct the record. Consequently, Plaintiffs' accusations are misplaced and fail to adequately demonstrate either bad faith or willfulness. Therefore, the fourth factor weighs against entering default judgment.

Under the fifth *Poulis* factor, the Court considers the effectiveness of alternative sanctions. On this factor, Plaintiffs offer little more than their conclusory opinion that the entry of default judgment is the "most effective and appropriate" sanction. Mov. Br. at 32. The Court disagrees.  This is not a case where a party has outright abandoned its discovery obligations or forfeited its defense.  To the contrary, the Defendants actively have been litigating this case since inception, have appeared for numerous hearings, have engaged with Plaintiffs, and have participated in the discovery process.  Under these circumstances, the Court is dubious to find default judgment to be the "most effective and appropriate sanction."  *Id.* In short, Plaintiffs have failed to satisfy the Court that no lesser sanction would be effective. Accordingly, the fifth factor weighs in Defendants' favor.

The final *Poulis* factor examines the meritoriousness of Plaintiffs' claims as well as Defendants' defenses. In considering this factor, "[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869–70. "Generally, in determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe*, 538 F.3d at 263.

Plaintiffs' argument on this factor misses the mark. Plaintiffs argue that "there is no evidence to suggest that" discriminatory intent previously found in another Township ordinance "is not also true for the subsequent ordinances adopted by [the] Township." Mov. Br. at 33. Plaintiffs' position demonstrates a fundamental misunderstanding of the law and seemingly creates a new legal standard, which the Court will not accept. Specifically, Plaintiffs' argument appears to be one that imputes or presumes intent and is premised entirely on supposition, not sound argument tethered to law and fact. It is therefore unsurprising that Plaintiffs are unable to provide any legal authority to support imputing discriminatory intent. Consequently, Plaintiffs have failed to properly address this factor, which weighs against entering default judgment.

It is settled law that the entry of default judgment should be a sanction of last resort. *Hildebrand*, 923 F.3d at 132. Plaintiffs have failed to make a sufficient showing that such a severe sanction is appropriate here. Consequently, the Court rejects Plaintiffs' request for this sanction.

### ii.  Plaintiffs Are Not Entitled to an Adverse Inference.

Plaintiffs' alternative request for an adverse inference fares no better.  In this Circuit, "[s]poliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Moreover, "there must be a finding that the spoliation was intentional and that there was fraud and a desire to suppress the truth before the Court will make a finding of spoliation." *Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 152 (D.N.J. 2009). "Under Rule 37(e), spoliation warrants an adverse inference only if a party acted with the intent to deprive another party of the information's use in the litigation—if, in other words, the spoliating party acted in bad faith." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475 (E.D. Pa. 2020).

The Court has little trouble rejecting Plaintiffs' request for an adverse inference.  First, Plaintiffs' argument on this issue skips a critical step in the analysis. Put simply, Plaintiffs' contention presupposes that the Court agrees with their conclusion that Defendants have spoliated evidence.  But Plaintiffs briefing is silent on exactly how Defendants spoliated anything and what specifically was spoliated. Indeed, Plaintiffs curiously gloss over this issue and jump straight into the adverse inferences they claim to be entitled to. Mov. Br. at 34-35.

Plaintiffs posit that they have established all elements necessary for the Court to grant:

(1) An inference that Defendants intended to discriminate against Plaintiff based on their Orthodox Jewish religion and race in their adoption of Township of Toms River Ordinance Nos. 4508-16, 4558-18, 4700-21, and 4752-22 and denial of their land use application; (2) An inference that the Township adopted these Ordinances to disproportionately burden places of worship; (3) An inference that the Defendant Township knew that these Ordinances would have a discriminatory impact on the Orthodox Jewish community; (4) An inference there is no rational or compelling governmental purpose for the parking and conditional use standards for houses of worship adopted in these Ordinances; and (5) An inference that all documents and information withheld from production are unfavorable to Defendants.

*Id.* at 34. Essentially, Plaintiffs are asking the Court to hold that Defendants' untimely and delayed production is proof that Defendants are withholding the requested documents with the intent to harm Plaintiffs' case. However, Plaintiffs fail to offer a single shred of evidence that any of the requested information either has been destroyed or withheld or that Defendants are acting with the "intent to deprive Plaintiffs." *Id.* at 39. This, by itself, dooms Plaintiffs' bid for spoliation.

Even if Plaintiffs had made a showing of spoliation, the imposition of an adverse inference requires the satisfaction of four elements, including control and bad faith, which, as addressed at greater length above (*supra* pp. 14-15), Plaintiffs have presented no proof of. The Court simply is not persuaded by Plaintiffs' conclusory, unfounded statements including, "[t]here is no dispute that the information sought [ ] is in Defendants' control" and "there remain broad categories of documents requested . . . which have not been answered or amended" to somehow show that the

documents were withheld. Mov. Br. at 35-36. For these reasons, the Court declines to impose any adverse inference.

### iii.  The Court Declines to Exclude Evidence.

Plaintiffs separately ask the Court to exclude a vague category of evidence without articulating why this is an appropriate sanction. This argument is rejected.

Where a party "fails to obey an order to provide or permit discovery," Rule 37(b)(2)(A)(ii) permits a court to enter an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." The Third Circuit has set forth the following factors for courts to consider when deciding whether the exclusion of evidence is an appropriate sanction for the delayed production of evidence:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at *29 (D.N.J. Mar. 17, 2017) (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000)). And this list has been supplemented to also consider "the importance of the excluded testimony" and "the party's explanation for failing to disclose." *Id*. at *30.

As an initial matter, Plaintiffs do not precisely identify what evidence they are asking the Court to exclude. Rather, Plaintiffs merely assert that Defendants "should not be permitted to introduce evidence as to the purported justifications for their laws

and actions, or to counter Plaintiff's claims and evidence demonstrating the Township's longstanding and ongoing hostility toward the Orthodox Jewish community in general and Plaintiff in particular." Mov. Br. at 41. Plaintiffs try to equate their application to the exclusion of "any evidence of drug abuse" or "any evidence of lost earnings," which courts have previously permitted. Reply Br. at 17. However, the Court finds that the category of evidence Plaintiffs identify is not merely lacking references to specific documents, as Plaintiffs suggest (*see id*.), but requires interpreting terms like "purported justifications" and "longstanding and ongoing hostility" that more narrow, specific categories do not.

Even assuming *arguendo* the Court were able to discern what evidence Plaintiffs refer to, Plaintiffs nonetheless fail to explain why the factors identified by the Third Circuit weigh in favor of exclusion. Plaintiffs' abbreviated analysis of each factor is insufficient and plainly does not establish either bad faith or willfulness on the part of Defendants. Tellingly, Plaintiffs refer to Defendants' "refus[al] to produce" and "destr[uction] of evidence" without a single citation to the record. *Id.* And it is not the job of this Court to make Plaintiffs' arguments for them. *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 334, (2006) (the "system relies chiefly on the *parties* to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication"); *United States v. Ward*, 760 F. Supp. 2d 480, 483 (D.N.J. 2011) ("[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and

arguments entitling them to relief." (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003)). For these reasons, the Court declines to impose this sanction.

### C. Plaintiffs are Entitled to Two Limited Sanctions.

#### i. Plaintiffs Have Sufficiently Shown Defendants Should be Held in Contempt of Court.

As noted above (*supra* Section II), one of the sanctions a court may impose under Rule 37(b) is to treat Defendants' failure to obey Court Orders as contempt of court. Proof of contempt "requires a movant to demonstrate (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010). "These elements must be proven by clear and convincing evidence, with ambiguities resolved in favor of the party charged with contempt." *Love v. Does 1-9*, 2024 WL 4544683, at *2 (D.N.J. Oct. 22, 2024) (internal quotation marks omitted). Unlike many other sanctions, "good faith is not a defense to civil contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

Each element is satisfied here. The dockets make clear that the Court has entered numerous Orders requiring the Defendants to complete their document production and extending their time to do so. ECF Nos. 47, 57, 66, 86, 106, 124, 130, 138, 141, 147, 168, 171 in ECF No. 21-2716; ECF Nos. 68, 74, 80, 92, 118, 132, 136, 146, 155, 160, 178, 181 in 21-3239. Yet, to date, Defendants' production remains incomplete. While the Court considers Defendants' arguments that they "have taken all reasonable steps to comply with the valid Court Order" and "violated the Order in a manner that is merely 'technical' or 'inadvertent,'" (Opp. Br. at 27 (quoting *F.T.C.*,

624 F.3d at 589)), at some point Defendants' conduct becomes an abuse of the Courts' courtesies. The Court has permitted over ten extensions and declines to permit any more.

Thus, the Court finds a contempt order is the appropriate sanction. Defendants are directed to complete their document production within sixty (60) days of the entry of this Order. Immediately thereafter, Defendants shall file correspondence with the Court advising that production is complete. In recognition of the cost (including the cost to the taxpayers) and time involved, the Court reluctantly permits Defendants to produce a completed privilege log and certification from their third-party discovery provider at the time they conclude their document production. And to further ensure Defendants' complete compliance with this Order and its discovery obligations, the Court hereby stays this matter. If Defendants fail to complete their document production with the 60-day period, the Court will enter an Order to Show Cause for violating this Order and revisit other available sanctions to determine the best way to address Defendants' continued noncompliance.

### ii. Plaintiffs are Entitled to Limited Attorneys' Fees.

Plaintiffs also seek a fee award of at least[9] $357,496.97 for attorneys' fees "related to Plaintiffs['] two-year effort in the *Bais Brucha* and *Tallymawr* matters to meet and confer on these issues, preparation of multiple deficiency letters and associated review and research, the Motion to Compel, and this Motion for Sanctions."

---

[9] Plaintiffs ask that the Court permit them to supplement this total amount to include fees for work performed on this motion and in connection with any additional depositions. Reply Br. at 20.

Mov. Br. at 46. The Court finds Plaintiffs' fee application overbroad and limits the award of attorneys' fees accordingly.

As for Plaintiffs' application itself, the Third Circuit has "noted that district courts may impose on an attorney those expenses, including attorneys' fees, caused by an unjustified failure to comply with discovery orders or pretrial orders." *Shaw v. Vetforce, Inc. Pennsylvania*, 2025 WL 83511, at *2 (M.D. Pa. Jan. 13, 2025) (quoting *Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008)) (internal quotation marks omitted). This authority is also set forth in Rule 37(b)(2)(C), which states, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Here, Defendants' failure to comply was not justified (let alone substantially justified), nor are there circumstances that would make the award unjust. Both before and after the Court's May 20 Order granting Plaintiffs' motions to compel, Defendants received numerous extensions of time and their continued inability to satisfy their discovery obligations has required Plaintiffs to incur the costs of these motions for sanctions to obtain relief. And while the Court appreciates that Defendants continue working towards completing their discovery obligations, Plaintiffs are correct that the discovery period in this case has been extended too far with insufficient progress. Accordingly, Plaintiffs are directed to file an appropriate motion for fees incurred *solely* in connection with the instant motions, excluding fees

for drafting and filing the reply brief, which they were not permitted to file. That motion shall be filed within 30 days.

## IV.    CONCLUSION AND ORDER

Presently before the Court is a motion by Plaintiffs seeking sanctions against Defendants pursuant to Federal Rule of Civil Procedure 37(b)(2). For the reasons stated above,

**IT IS** on this 27th day of March 2025

**ORDERED** that Plaintiffs' motions (ECF No. 172 in 21-2716 and ECF No. 182 in 21-3239) are GRANTED IN PART and DENIED IN PART; and it is further

**ORDERED** that Defendants shall be held in contempt of court for their failure to produce the items identified in the May 20, 2024 Order (ECF No. 134 in 21-2716; ECF No. 142 in 21-3239); and it is further

**ORDERED** that within sixty (60) days of the entry of this Order, Defendants shall produce their completed document production, final privilege log, and complete certification from their third-party discovery provider; and it is further

**ORDERED** that Plaintiffs are granted leave to file the appropriate fee application for fees incurred in connection with the instant motions (ECF No. 172 in 21-2716 and ECF No. 182 in 21-3239), excluding reply briefs, only by way of formal motion within thirty (30) days of the entry of this Order; and it is further

**ORDERED** that Plaintiffs' requests for the entry of default judgment, the imposition of adverse inferences against Defendants, and the exclusion of evidence are DENIED; and it is further

**ORDERED** that the Clerk is directed to terminate ECF No. 172 in Civil Action

No. 21-2716 (RK) (JTQ) and ECF No. 182 in Civil Action No. 21-3239 (ZNQ) (JTQ).


s/ Justin T. Quinn
JUSTIN T. QUINN
United States Magistrate Judge


--Terminates ECF No. 172 in 21-2716

--Terminates ECF No. 182 in 21-3239